## FLEMING v. CHICAGO CARTAGE CO.
### No. 9044.

Circuit Court of Appeals, Seventh Circuit.
March 27, 1947.

David London, Albert M. Dreyer, William W. Kapell, George Moncharsh and William E. Remy, all of Washington, D. C., and George Leonard, Jacob Cohen, and Isadore L. Kovitz, OPA, all of Chicago, Ill., for appellant.

Thomas Dodd Healy and Wm. B. Crawford, both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The Administrator of the Office of Price Administration appealed from a judgment for defendant, a motor vehicle carrier. The complaint sought treble damages for defendant's alleged violations of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., and maximum price regulations issued thereunder. It further asked for injunctive relief. In this court the Temporary Controls Administrator was substituted as appellant.

It seems that plaintiff asserts control over defendant's rates on the theory that they are not subject to regulation by any state or regulatory body other than plaintiff. Defendant pleaded its exemption under Section 302(c) (2) of the Act, as a common carrier, and under Amendment 50 to Supplementary Price Regulation No. 11.

The cause was submitted upon a stipulation of facts, which, with the pleadings, were agreed to contain all the facts applicable to the issue of defendant's liability. It was further agreed that if the court should find there was liability on the part of defendant, the court should subsequent-

ly determine the amount of damages recoverable, if any, either upon evidence afterwards offered by the parties or upon a further agreed statement of facts.          t

Appellee is in the business of transporting goods and merchandise for hire. It owns and operates about one hundred pieces of equipment, consisting of trucks, tractors and trailers, and serves about one thousand different persons, firms and corporations a year. Its services consist of three types known as "pick-up and delivery service for railroads," "steady house service," and "general hauling." The court found that all of these services were rendered to the general public by appellee as a common carrier, and were specifically exempted by the Act from regulation thereunder. Hence, it held that the evidence failed to establish a cause of action, and entered judgment for the defendant without costs.

Appellee holds a certificate of public convenience and necessity issued in 1941, by the State of Illinois, classifying it as a local carrier under the provisions of the Illinois Truck Act, Ill.R.S. ch. 95½, sec. 240 et seq. Appellant seems to think that appellee relies upon this statute as one which regulates rates, when in fact it does not purport to regulate them. However, appellee makes no such contention, nor did the court make any such ruling. The theory of defendant's answer, with respect to that statute, is that "defendant operates under a certificate of public convenience and necessity from the State of Illinois to transport commodities by motor vehicle for compensation for the public generally in interstate commerce within * * * (Illinois) at rates which are required by law to be non-discriminatory." It is made quite clear that this requirement of non-discriminatory rates is a duty imposed by common law, and not by statute, and was clearly so stated by the court and also by appellee in its answer and brief. Under this certificate defendant is authorized to perform for the general public the transportation of general commodities, structural steel and property of unusual length and width. For such transportation defendant charges rates in accordance with a tariff published by the Cartage Exchange of Chicago.

The Price Administrator's Amendment 50 to Supplementary Regulation 11 does not restrict the exemption to common carriers *required by statute* to charge nondiscriminatory rates. Indeed, in a Statement of Consideration accompanying such amendment on May 25, 1944, he used the following language: " * * * the exemption from the G.M.P.R. with respect to all services heretofore subject to temporary regulation depends on whether companies furnishing those services offer them to the general public at rates or charges which are required by statute, regulation or *judicial decision* to be nondiscriminatory." (Our emphasis.) It is not denied that the common law and the judicial decisions of the highest courts of Illinois require such rates to be nondiscriminatory, and the stipulation abundantly supports the court's finding that defendant's services under this Illinois certificate were offered by defendant to the general public.

The defendant also holds a certificate of public convenience and necessity as a common carrier by motor vehicle of general commodities in interstate commerce, issued September 20, 1943, by the Interstate Commerce Commission. It also has a tariff on file with the Commission for such transportation service.

The defendant is also licensed by the City of Chicago to engage in the business of a public carter and to keep, use or employ for hire or reward within said city, automobiles, auto cars or similar motor vehicles used as public carts, subject to the ordinances of that city. The Public Carter's Ordinance requires defendant to be licensed as a public carter to engage in transporting merchandise within that city for hire. That ordinance further provides, under penalty of fine and revocation of license, that no public carter shall refuse to convey the merchandise of any person when applied to for that purpose, at a greater rate than therein prescribed.

It is under the Federal and State certificates and the city license, above referred to, that defendant claims it is authorized to perform all of its services in issue without interference from the Office of Price Administration.

Under these authorizations defendant furnishes transportation service for railroads entering Chicago, referred to in the stipulation as "pick-up and delivery service," at uniform rates for all such railroads in accordance with a published tariff, established as a result of negotiations between them and the Cartage Exchange of Chicago. This service consists of picking up merchandise routed over such railroads, and delivering it to the ultimate consignee. Most of such transportation service is Interstate Commerce which is subject to regulation by the Commission.

Defendant also performs a transportation service, referred to in the stipulation as "steady house service," in which defendant undertakes to perform a prescribed part of a shipper's transportation at an agreed rate. These agreements provide that defendant will furnish necessary labor and vehicles to perform shippers transportation service, and to transport minimum amounts varying from 100,000 to five million pounds of freight per year and, subject to availability and loading capacity of defendant's fleet of trucks, to transport such additional freight as may be tendered for shipment.

In the performance of such services, defendant assumes the common carriers' liability of an insurer against loss or damage of whatever kind and nature caused to such goods entrusted to it.

Defendant also performs transportation service for shippers referred to in the stipulation as "general hauling," which includes the delivery of general commodities for such shippers to and from railroads; and from one establishment to another. The rates or charges for such services are established by defendant under tariffs and also by individual agreement. This "general hauling service" was conceded by the Administrator to be common carrier service.

The defendant solicits all of its customers, as above described, through trade publications, direct mail advertisements, telephone books and personal contact with prospective shippers. These solicitations, with the various franchises above referred to, are relied upon by defendant as a complete holding out to serve the general public.

None of defendant's charges is in excess of the maximum rates prescribed by the Public Carter's Ordinance of the City of Chicago, although it is conceded that defendant has charged more than permitted by the G.M.P.R. if the same is applicable to defendant.

The findings of the court sustained defendant's contention, and as to all questions of fact we are bound by those findings. The plaintiff does not deny this to be true, however it argues that defendant may be a common carrier as to one phase of its transportation service and not as to another. More specifically stated, plaintiff contends that the District Court was not warranted in finding that defendant held itself out to serve the general public in all its transportation services, but only in its "general hauling."

With respect to the "pick-up and delivery" service, plaintiff contends that this is done only for railroads, hence it argues that it constitutes no service to the public. It is stipulated, however, that this service is similar to the "general hauling" service, except that it is done for railroads. "Pick-up and delivery" service is performed for many railroads in Chicago, presumably by different truckers, and it is done for many shippers who do not wish to take advantage of the railroad's free pick-up and delivery. We suppose, in a larger sense, that all of defendant's business consists of picking up and delivering merchandise, or property, and it is conceded that "general hauling" is a common carrier service. It is also agreed that the railroads in their dealings with defendant are rendering common carrier service to the public, and it is most difficult to understand why the characterization of defendant's services should be changed merely because it is being patronized by a railroad for the same purpose as it is patronized by its other customers. True, railroads and other patrons sometimes need different kinds of conveyances for carrying merchandise beyond their terminals to the consignee, such as refrigerated vehicles. Defendant has them as a part of its equipment and their use constitutes but a part of the service which defendant renders to the public generally as a common carrier. It also enters into a contract, with the railroads

which it serves, for any length of time not often exceeding a year, to assign a certain number of conveyances of different kinds for the purpose of caring for such railroad's approximate needs. However, this record discloses that no one has ever been refused any of the three services which defendant purports to furnish. It is not likely that defendant or any of its competitors would have sufficient equipment to care for all the needs and demands of all the railroads in a city the size of Chicago, nor is it necessary, for an unsupplied demand will usually result in sufficient equipment for that purpose.

Plaintiff seeks to distinguish between a contract carrier and any other type of carrier, and it urges that each phase of defendant's business should be considered separately in order to determine the character of the cartage here involved, relying on Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L.Ed. 984, Ann.Cas. 1916D, 765, and Rathbun v. Ocean Accident Corp., 299 Ill. 562, 132 N.E. 754, 19 A.L.R. 140. In the Kutz case the question was whether the plaintiff was a common carrier under the statute. The court held it was not. It was a livery corporation and asserted the right to refuse customers, a thing which the present defendant never did. There, also, was an exclusive dedication of equipment to a particular customer, which is not present in the instant case. In the Rathbun case there was an exclusive dedication to the customer, and there was no holding out of service to the public.

Plaintiff further relies on Thomson v. United States, 321 U.S. 19, 64 S.Ct. 392, 394, 88 L.Ed. 513, in support of its contention that "pick-up and delivery" service is not a common carrier service. In that case an application was made by the railroad company to the Interstate Commerce Commission for rights under the "grandfather clause" as a motor carrier to render coordinated rail-truck freight service. The court held that under paragraph 206(a) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 306(a), such certificate could be awarded only to one who was a common carrier by motor vehicle. The court said: " * * * Thus where a person holds himself out to the general public to engage in a single transportation service, consisting entirely or partly of motor vehicle operations, he is a 'common carrier by motor vehicle' within the contemplation of the statute. And Congress intended that he alone should receive 'grandfather' rights on the basis of that single service under Section 206(a) of the Act."

The court further said: " * * * We need not decide whether these operators (truckers) are entitled to 'grandfather' permits as to other freight transported over their routes. * * * This so-called * * * test, however, is applicable in this case only insofar as it aids in determining the person offering and engaging in the single coordinated rail-motor freight service."

We think that case is not authority for holding that a motor truck company performing "pick-up and delivery" service is not rendering a common carrier service. Indeed the contrary seems to be fully supported in United States v. N. E. Rosenblum Truck Lines, 315 U.S. 50, 62 S.Ct. 445, 86 L.Ed. 671.

In the instant case, rights under the "grandfather clause" are not in issue, and we think it is clear, under all the applicable decisions, that in its "pick-up and delivery" service for the railroads, defendant was engaged as a common carrier for the public generally, because the court found from uncontroverted facts that defendant held itself out to the public generally as willing and able to furnish such service, or like service, to all or any part of the public desiring it, and with this offer it never failed to comply.

Under the original Motor Carriers Act of 1935, 49 U.S.C.A. § 301 et seq., there arose the question of whether motor carriers in pick-up and delivery service for a railroad were entitled to certificates as contract carriers by motor vehicle or as common carriers by motor vehicle. Scott Brothers, Inc., was a motor carrier performing exclusively the "pick-up and delivery service" for one railroad and its environs, and contended that as such it was a contract carrier by motor vehicle and entitled to a permit as such. In construing the application of such motor carrier the Commission said in Scott Brothers, Inc., Collection and Delivery Service, 4 M. C. C.

551: "Its status as such, however, would be that of a common carrier by railroad rather than a common carrier by motor vehicle because the service in which it would engage is clearly an integral part of railroad common-carrier service under section 1 (3) of part 1, as the Commission and the courts have both decided."

In confirmation and approval of this language of the Commission it was restated, in effect, in the Transportation Act of 1940. Under this amendment, Part II Motor Carrier Act, Sec. 202 (c), 49 U.S.C.A. § 302 (c), the following provision appears: "Notwithstanding any provision of this section or of section 203, the provisions of this part, except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation and equipment, shall not apply * * * (2) to transportation by motor vehicle by any person (whether as agent or under a contractual arrangement) for a common carrier by railroad subject to part 1 * * * but such transportation shall be considered to be performed by such carrier, * * * as part of, and shall be regulated in the same manner as, the transportation by railroad, * * * to which such services are incidental."

Such motor vehicle service is also designated as common carrier service in Part I of the Transportation Act of 1940, which amended Part I of the Interstate Commerce Act, Section I (3) (a), 49 U.S.C.A. § 1 (3) (a): "The term 'common carrier' as used in this part shall include * * *. The term 'railroad' as used in this part shall include * * * and terminal facilities of every kind used or necessary in the transportation of the persons or property designated herein, including all * * * used or necessary in the transportation or delivery of any such property."

Thus it would seem that this section of Part I construed in connection with section 202 (c) (2), both being incorporated in Parts I and II of the Transportation Act of 1940, provides that "pick-up and delivery" service is a common carrier service and, if performed by a common carrier, is subject to regulation under Part I of the Interstate Commerce Act.

Plaintiff relies on the Administrator's "Statement of Considerations" involved in the issuance of Amendment 175 to Supplementary Regulation 14 of G. M. P. R. dated May 20, 1943. That regulation, however, does not purport to regulate the rates for such services when performed by a common carrier. It specifically applies to those who serve other than as common carriers. Indeed, there would be grave doubt of the Administrator's power to further extend such regulation, in view of Section 302 (c) (2) of the Emergency Price Control Act. Neither the amended Act of 1940 nor the Statement of Considerations last referred to purports to define or restrict a common carrier serving the general public. Both, as well as the discussions in Congress, seem to be directed to the exclusion from the exemption, under Sec. 302 (c) (2) of the Emergency Price Control Act, of all carriers *except common carriers* holding themselves out to serve the general public. By such exception both Congress and the Administrator fully realized and intended that all carriers engaged in "pick-up and delivery service" for railroads were not to be considered as mere "contract carriers" as characterized by the parties at bar, otherwise, it was meaningless and inconsistent to insert the exception.

■■ The issue here involved poses but one controverted question of law, that is to say—was defendant a common carrier in its service to the railroads? The District Court held that it was, and it based that conclusion of law upon two purely factual findings, that is to say—defendant was a carrier of goods, such as is here involved, for hire, and it held itself out as such to the general public. These findings are supported by substantial evidence and by them we are bound.

■■ Plaintiff also contends that "steady house service" is that of a private carrier because certain trucks are assigned to particular shippers for specialized service, hence it argues that those trucks are not held out to serve the public generally, notwithstanding the fact that the court found, upon uncontradicted evidence, that defendant held out that it was willing and able to furnish such service to the public general-

ly. In other words, plaintiff argues that if the truck is adapted to the shipper's needs, such as refrigeration, it is not held out to serve the general public, and as a matter of law such service is not a common carrier service. We are unable to find anything in the stipulation of facts or the exhibits whereby defendant is required to dedicate or assign to the exclusive use of these patrons any particular equipment, or to prevent defendant from hauling for the general public with any such equipment, as the District Court found it did. Every undertaking to transport merchandise is under some form of contract, oral or written, and the mere existence of a written contract, usually a bill of lading, does not exclude a common carrier status if the transportation, as in this case, is rendered for the general public, even though such carrier is rendering such service as an agent for another. United States v. Brooklyn Eastern District Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613, 6 A.L.R. 527; United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567; Doyle Transfer Co. v. United States, D. C., 45 F.Supp. 691; Hastings Express Co. v. City of Chicago, 135 Ill.App. 268.

Plaintiff's argument is the same with respect to both "steady house" and "pick-up and delivery" service, that is to say, it contends that a specialized transportation service performed under contract is rendered only to defendant's contractual customers and is not held out to the public generally. We do not conceive this to be the law. In Alton R. v. United States, 315 U.S. 15, 62 S.Ct. 432, 435, 86 L.Ed. 586, Fleming was granted a certificate of public convenience and necessity as a common carrier. He performed only the highly specialized "drive-away service" of new automotive vehicles, from factories to dealers in several states, under contracts with automobile manufacturers, who alone needed such service. The Interstate Commerce Commission had ruled that such service was common carrier service and the Supreme Court affirmed, stating: "Fleming's service was confined to deliveries at very few points in several states due to the fact that he was furnishing a highly specialized transportation service from manufacturers to dealers

and distributors. * * * Fleming held his services out to the public generally as a common carrier and operated as such; and he held himself out to transport by the driveaway method between any points in the states for which application was made." See also State Public Utilities Commission ex rel. v. Noble, 275 Ill. 121, 113 N.E. 910.

Plaintiff also contends that defendant's rates for its "steady house" transportation are different and therefore discriminatory. That these patrons at times pay different rates may be true, but it does not follow from that fact alone that such rates are discriminatory. The fact that a different rate is charged for different or the same commodities for a different territory involving varied factors of time, traffic, distance or route and the like does not prove that the rates charged and received were discriminatory, nor is there other proof that they were.

In support of its contention that defendant's "steady house" transportation is that of a private carrier, rather than that of a common carrier for the general public, plaintiff relies upon the following cases: Beatrice Creamery Co. v. Fisher, 291 Ill. App. 495, 10 N.E.2d 220; N. S. Craig Contract Carrier Application, 31 M. C. C. 705; Lewis O. Hipkins Contract Carrier Application, 42 M. C. C. 807; P. J. Hamill Transfer Co. Contract Carrier Application, 42 M. C. C. 852. In the Beatrice case the carrier was neither required to nor did it have a license as a public carrier in Illinois or any other State, and it had refused on several occasions, when so requested, to carry suitcases or parcels for students and other persons on their trips. That court said [291 Ill.App. 495, 10 N.E.2d 223]:

"When a carrier does not maintain either published rates or schedules, regular trips, fixed termini, or freight depots, *and refuses divers shipments offered,* it is persuasive evidence that he does not hold himself out to serve the public generally. (Our emphasis.)

"The trend of authorities in Illinois holds that a common carrier is one who undertakes for the public to transport from place to place such persons or the goods of such as choose to employ him for hire. * * *.

(Citing among other cases Rathbun v. Ocean Corp., 299 Ill. 562, 132 N.E. 754, 19 A.L.R. 140.)

"The real test is whether or not the carrier serves all of the public alike, who apply to him for carriage." (Citing Rathbun v. Ocean Corp., supra.)

That court further said: "When the plaintiff affirms and the defendant denies that the defendant is a common carrier, the question becomes a controverted question of fact to be determined by a consideration of the evidence by the trial court." (Citing among other Illinois cases Rathbun v. Ocean Corp., supra.)

In the above list of items of evidence which that court thought amounted to persuasive evidence that the carrier did not hold itself out to serve the public generally, it is worthy of note that that court did not say that anything less than the complete list mentioned would or would not amount to persuasive evidence of the carrier's intention. We regard that entire statement of the court merely as another way of saying that the finding of the lower court was supported by substantial evidence, and was binding on the reviewing court. With that we are in accord, however, in the case at bar the carrier had a license, either federal or state, which authorized it to perform every class of service for the general public here in issue, and at no time was any such service denied anyone seeking it. Under these circumstances the District Court found that defendant was a common carrier for the general public, and by that finding we are. bound, because it is supported by substantial uncontroverted evidence.

The Craig case concerned the carrier's application to have its operations declared those of a contract carrier, and not of a common carrier holding itself out to serve the general public. It was a reconsideration of its former decisions in the same matter. The applicant contended that it had an exclusive type of service which made its operations those of a contract carrier. The Commission, however, held it to be a common carrier, and said: "Each case requiring a determination whether or not common carriage exists, when brought to its irreducible minimum, turns finally on the question whether or not a holding out to the public generally is shown." In the former opinion, the Commission used the following language, which was in no manner modified or altered by the latter: "The mere existence of a contract for transportation by motor vehicle cannot of itself fix a carrier status as that of a contract carrier."

In both the Hipkins and the Hamill cases the decisions were made without printed report. Whatever reasons may have been given for these rulings, or the facts upon which they were based, are of little moment, in view of the decision in United States v. N. E. Rosenblum Lines, 315 U.S. 50, 62 S.Ct. 445, 86 L.Ed. 671.

In further emphasizing the point that the Illinois Truck Act does not expressly require nondiscriminatory rates to be charged for services, plaintiff urges that this court has held that that Act has no bearing upon the status of a carrier. Porter v. Prentice, 155 F.2d 967. That case merely held, where the O. P. A. complaint alleged defendants to be a contract carrier, that the latter could not prevail on their motion to dismiss by merely attaching a copy of their local carrier certificate issued under the Illinois Truck Act. Upon hearing the motion, the court considered the evidence, both documentary and oral, offered by appellees in support of their motion, over the objection of appellant. The latter was permitted a measure of counterproof, but other material evidence offered by him was not received. It bore upon the nature, method and prices charged by appellees for the carrier services furnished locally under the certificate as a local carrier. This evidence was material on the issue of whether or not appellees were carrying on a business of common carrier, and, therefore, exempt from the provisions of the Emergency Price Control Act, unless this issue was conclusively determined from the nature of the certificate of a local carrier issued by the State of Illinois. The court sustained a motion to dismiss, finding that the defendants, by virtue of their certificate as a local carrier, were common carriers and therefore exempt from O. P. A. regulation under the Act. This court said that the defense sought to be raised by the motion was not one of lack of jurisdiction over the subject

matter but was one relating to the merits, and that therefore the motion should have been denied. The court added that a certificate as a local carrier issued under the law of Illinois did not per se exempt appellees from the operation of the Act. True, that conclusion has some characteristics of dictum, but we doubt if it is, in view of the fact that the court said that the factual issue as to whether appellees were carrying on the business of common carrier, exempt from the provisions of the Emergency Price Control Act, depended upon certain excluded evidence which issue could not be determined alone by the certificate and the common law.

Affirmed.