(No. 32438.—

EAGLE BUS LINES, INC., Appellant, *vs.* ILLINOIS COMMERCE COMMISSION *et al.,* Appellees.

*Opinion filed May 24, 1954.*

ALBERT J. MESEROW, of Chicago, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (HARRY R. BEGLEY, and THOMAS S. CHUHAK, of counsel,) for appellee Commerce Commission; RUSSELL J. TOPPER, and BERNSTEIN & LEBIN, both of Chicago, for appellee Sheridan Plaza Bus Lines, Inc.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Eagle Bus Lines, Inc., plaintiff-appellant and hereinafter called Eagle, brings this appeal from an order of the superior court of Cook County affirming certain orders of the Illinois Commerce Commission entered on January 25, 1951, and on February 6, 1951, granting a certificate of public convenience and necessity to Sheridan Plaza Bus Lines, Inc., to operate motorbuses carrying passengers from specified points in the city of Chicago to the various race tracks in the Chicago area. These orders affirmed a previous commission order of June 16, 1948, authorizing the issuance of a certificate of public convenience and necessity to Sheridan Plaza Bus Lines, Inc., hereinafter referred to as Plaza, except that Lincoln Fields track was excepted and outbound and inbound pickup or discharge service was forbidden north and west of Howard and Paulina streets in Chicago. The appeal comes here directly by virtue of statutory provision. Ill. Rev. Stat. 1953, chap. 111⅔, par. 73.

These proceedings originated with the filing on July 29, 1947, by Plaza, of a petition for a certificate of con-

venience and necessity to operate buses between designated points in the city of Chicago and the race tracks in the Chicago area. On July 16, 1946, Plaza had filed an earlier petition which was dismissed without prejudice. In the meantime, Eagle had filed a petition and had, on May 1, 1947, received its certificate.

Upon the filing of this petition by Plaza, seventeen respondents were made parties to the proceedings since they were carriers already rendering transportation service between two or more of the points sought to be served, or had applications pending before the commission for authority to serve two or more of said points. Several of these respondents were bus companies, including Eagle, and the remainder were railroads. A hearing was had whereat only Eagle opposed the application. Eagle opposed on the ground that adequate transportation was being furnished to the race tracks, that Eagle was the first in the field, that Plaza's proposed service would be directly competitive with Eagle, that public convenience and necessity did not require the proposed service, but if the commission found such service to be required then Eagle was ready, willing and able to serve the public need. The certificate was granted to Plaza on July 16, 1948. Eagle then filed a petition for rehearing and a motion to vacate the order. Only the petition for rehearing was allowed. Additional hearings were had culminating in the orders here on appeal. Eagle first appealed to the superior court of Cook County which affirmed the commission's orders. It is from the judgment of that court that Eagle now appeals.

It is first urged by Eagle that the order of the commission granting the certificate of convenience and necessity to Plaza is invalid for the reason that it did not contain findings to the effect that services rendered by Eagle were inadequate or unsatisfactory, or that Eagle was given an opportunity to render adequate service and failed or was unable to do so. Eagle contends that it was the existing

and first carrier in the field. In reliance on this court's decision in *Egyptian Transportation System, Inc.* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580, Eagle maintains that before the commission can grant a certificate of convenience and necessity to one carrier, where another is in the field, it must appear that the existing utility is not rendering adequate service, the existing utility should be permitted to show that it can furnish the needed service, and the commission must find that the existing carrier has failed or is unable to provide the additional service. This is the proper rule to be applied in the case of a utility which is first in the field, but it must be proved that such an existing carrier does actually enjoy such priority. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Commerce Com.* 414 Ill. 134; *Chicago Motor Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320.) This rule protecting the pioneer in the field is based on a consideration of the time and money expended by the pioneer in developing its business and rendering adequate service to the public, (*Chicago Bus Co. case*) and the pioneer utility having taken the "bitter with the sweet" throughout the years of development of the utility business in the area. *Chicago, Rock Island and Pacific Railroad Co.* v. *Commerce Com.* 414 Ill. 134.

This record does not indicate that Eagle is the pioneer utility in the field, nor that it is the sole and existing carrier. Quite the contrary is evidenced thereby. Eagle originators first began operations in the business of transporting the public from points in Chicago to the race track in 1932. The operation now known as Plaza began transporting the public to these same race tracks by motorbus in 1925. Plaza thus entered the field long before Eagle. It is true that Eagle received its certificate of convenience and necessity prior to the granting of Plaza's certificate. Mere priority in time of application will not of itself govern the granting of a certificate (*Chicago Bus Co. case*)

and does not determine who is the pioneer in the field. A public utility is any business that may own, control, operate or manage, directly or indirectly for public use, any plant, equipment or property used or to be used for or in connection with the transportation of persons or property or any enterprise so closely and intimately related to the public, or to any substantial part of a community, as to make the welfare of the public, or a substantial part thereof, dependent upon the proper conduct of such business. (*Highland Dairy Farms Co.* v. *Helvetia Milk Condensing Co.* 308 Ill. 294.) It is thus seen that the business need not be incorporated, or even presently regulated by the Commerce Commission to be in fact a public utility. Moreover, these two carriers do not constitute the only carriers in the field. For many years, ten other utilities have supplied the public with transportation facilities to the race tracks in the Chicago area, any or all of which may have preceded both Plaza and Eagle in the field.

We have also shown above that one of the requirements for the application of the doctrine protecting the pioneer in the field is the need to protect a substantial investment made by a pioneer utility in developing the business. Without such investment, there is little reason to protect the pioneer from a competitive enterprise. Up to the time of the original hearings in this cause Eagle owned no buses, employed no permanent drivers, neither owned nor operated garages or repair shops, nor maintained nor owned terminals or bus stops. All of its personnel, mechanical and equipment requirements were supplied under a leasing arrangement with Central West Motor Stages, Inc. Central West Motor Stages is wholly owned by the same persons who own Eagle but it has business other than providing for the needs of Eagle. It is readily seen that Eagle has no substantial investment in the development of its business which requires the protection afforded a pioneer in the field.

Eagle was not the first in the field, nor has it made a substantial investment in the initial development of its business. It is in no position to claim the benefits of a rule applicable to protect pioneer utilities. Consequently it was unnecessary for the commission to find that the service rendered by Eagle was inadequate or unsatisfactory, to give Eagle an opportunity to supply the needed or corrected service, or to find that Eagle had failed or was unable to provide the additional service.

Both Plaza and Eagle are existing carriers and one has no greater right than the other. (*Illinois Highway Transportation Co.* v. *Commerce Com.* 404 Ill. 610.) The Public Utilities Act discloses the legislature's intention that a mere existence of a certificate shall not preclude the granting of a second certificate by its declaration that a certificate of convenience and necessity shall not be construed as granting a monopoly or exclusive privilege, immunity, or franchise. (Ill. Rev. Stat. 1953, chap. 111⅔, par. 56.) The Commerce Commission has ample power to decide whether one or several companies engaged in furnishing public utility service shall operate in the same locality. *People* v. *City of Chicago*, 349 Ill. 304.

It is next contended by Eagle that the findings of the commission are not sufficient to support the order. Eagle claims that the commission's findings Nos. 2 and 3 indicate the weakness of Plaza's position. Finding No. 2 recites that the findings of notice under the Public Utilities Act and the rules of the commission were *only substantially* complied with. The sole failure of notice related to Plaza's failure to publish in Will County, where Lincoln Fields race track is located and to which Plaza proposed to operate its motorbuses. On January 25, 1951, the commission vacated its order of June 16, 1948, insofar as it authorized Plaza to operate to Lincoln Fields. Notice requirements in all areas in which other tracks are located

were fully complied with. This specific failure of notice was noted in the commission's finding No. 26.

Finding No. 3 stated that no one was injured by Plaza's failure to comply with the rules of the commission and the commission should waive the requirements insofar as Plaza has not complied with them. Eagle contends that the commission fails to identify such violations rendering their gravity incapable of evaluation. The only violation evidenced by the record is that Plaza, after certification on June 16, 1948, moved its point of origin ¾ of a block from Wilson and Sheridan to Sunnyside and Sheridan to avoid a serious traffic congestion at Wilson and Sheridan, without first obtaining the permission of the commission. That violation is noted in finding No. 22. Eagle was fully informed of such violation as it was present at all hearings. (*Schwartz* v. *Commerce Com.* 409 Ill. 182.) Neither Eagle nor any other party was injured by this minor violation. Moreover the commission may enforce or waive its rules as it deems necessary where no injury has been suffered by any party. *Schwartz* v. *Commerce Com.* 409 Ill. 182.

Eagle is in no position to urge this point for the reason that it moved its west side point of origin without the authority of the commission, ceased to operate its certified route from Howard and Hermitage in Chicago without commission consent, and failed to file required annual reports in 1947, 1948, and 1949, all in violation of commission rules or the Public Utilities Act.

Eagle attacks findings Nos. 12, 13, 14, and 15 as inadequate to support the requirement that Plaza, as an applicant for certification, be financially and mechanically able to furnish adequate, continuous and safe bus transportation to the specified race tracks.

Finding No. 12 recognized the fact that Plaza owned only one bus and obtained its other bus requirements from other companies. Eagle owns only five buses and likewise

obtains its additional requirements by lease. The record adequately indicates that each company has access to a sufficient number of buses to maintain its present schedules.

Finding No. 13 reveals that Plaza has only assets of $4100, and showed an operating loss for the first ten months of 1950. It is shown by finding No. 14 that Eagle sustained a net operating loss for the first nine months of 1950, and that its working assets are less than $10,000. Eagle also claims assets of $13,700 in accounts receivable from Central West Motor Stages, Inc., which itself had a loss of $14,000 in 1949 and a deficit of $26,000 in excess of capital stock outstanding. Finding No. 15 is completely correct in finding that both Eagle and Plaza are in a weak financial position, and that since no other company offers to provide the service these companies perform, the commission determined that financial consideration should not determine whether or to whom a certificate should issue. Eagle enjoys no greater degree of financial ability to perform this service than is demonstrated by Plaza. If Eagle is financially capable of performing its service, Plaza is equally capable of performing its proposed service. Hence, the commission properly refused to treat the financial condition of each as a determinative factor in this cause. The action of the commission is in no way arbitrary or unreasonable.

Finding No. 15 further found that neither Plaza nor Eagle had at all times strictly complied with the Public Utilities Act and the commission rules but that the commission would endeavor to cause both companies to comply in the future. It is demonstrated above that such violations as Plaza effected were not material and might be waived by the commission.

The Public Utilities Act (Ill. Rev. Stat. 1953, chap. 111⅔, par. 72,) makes the commission's findings of fact *prima facie* true and its orders and decisions are not to be set aside unless clearly against the manifest weight of the

evidence. To reverse and set aside an order on the ground that it is unreasonable it must be an arbitrary action, not resting on a reasonable basis for the exercise of the discretionary powers of the commission. (*Chicago Motor Bus Co.* v. *Chicago Siage Co.* 287 Ill. 320; *Campbell* v. *Commerce Com.* 334 Ill. 293.) It appears that the above findings are reasonably related to the evidence and substantiate the order of the commission. Consequently, the order may not be set aside.

Eagle finally contends that the findings of the commission relating to convenience and necessity are not supported by the evidence and are not sufficient to support the order. Section 65 of the Public Utilities Act requires the Commerce Commission to make and render findings concerning the subject matter and facts inquired into and enter its order based thereon. (Ill. Rev. Stat. 1953, chap. 111⅔, par. 69.) Such findings of fact must be sufficiently specific to enable the courts to intelligently review the orders of the Commerce Commission, and to ascertain if the facts upon which such orders are based constitute a fair and reasonable basis for the decision of the commission. *Illinois Central Railroad Co.* v. *Commerce Com.* 411 Ill. 526.

Specifically Eagle first attacks finding No. 16 as contrary to the evidence in stating that on week ends and holidays there is a demand for more service than Eagle can supply with the buses available to it and that without the service provided by Plaza the public would be inconvenienced. Eagle further avers that such finding is contrary to the findings of the commission upon the certification of Eagle on May 1, 1947.

The record indicates that on Saturdays Plaza ran from 5 to 9 buses to Hawthorne and Sportsmen's tracks, while Eagle operates 12 to 20 buses during the Sportsmen's Park season. At Arlington Park Plaza used 20 to 25 buses on Saturdays and holidays, while Eagle operated 12 to 20

buses under lease from Central West Motor Stages, Inc., and owns five buses, making a total of twenty-five buses. It is obvious that on some week ends and holidays Eagle does not have sufficient buses to give the service now performed by both Plaza and Eagle on those days. Moreover the findings of the commission in the issuance of a certificate to Eagle on May 1, 1947, are not decisive here. Findings in one case are not conclusive in other cases. (*Lowden v. Commerce Com.* 376 Ill. 225.) It was stipulated between the parties that those parts of the record in the matter of the application of Eagle for a certificate of convenience and necessity to operate as a motor carrier which related to Eagle's ability to furnish the type of service asked by Plaza to be certified could be made a part of this record. It was further stipulated that such matter included the testimony of William Reznick and other witnesses who testified to the financial condition, the equipment they had, the garage and all matters that you ordinarily conceive of as going into the affirmative case. The findings were not a part of the stipulation, were not made a part of this record, and hence cannot be considered here as conclusive.

Eagle complains that finding No. 23 is not a sufficient finding of facts from which this court can determine whether the order is justified or not, for the reason that finding No. 23 refers to another proceeding of which this court knows nothing. That finding states that in view of the finding in Case No. 33727, that public convenience and necessity required service to several specified race tracks from the intersection of Howard Street and Hermitage Avenue in Chicago and Eagle has ceased to operate from that point as ordered in Case No. 33727, Plaza should be ordered to perform said service. The certificate issued to Eagle in Case No. 33727 is made a part of this record, although the entire proceedings in that case do not appear of record here. That certificate orders Eagle to provide a service commencing at the intersection of Howard Street

and Hermitage Avenue in Chicago, in the interests of public convenience and necessity. Furthermore, the testimony of William Reznick, president of Eagle, shows that Eagle has ceased to operate from said point. The finding is adequately supported by facts appearing in this record.

Eagle objects to findings Nos. 21 and 23 as stating that Eagle has ceased to operate their route from Howard Street and Hermitage Avenue. The record does indicate that Eagle does pick up passengers there when one of its routes happens to go by there, as the route from the Loop to Arlington Race track. However, the testimony of its president, Mr. Reznick, admits that Eagle no longer operated a regular terminal at that point for all race tracks as ordered by the commission. Eagle asserts that Plaza offers "free" pickup service within a block of this point for all south and west side passengers, taking them to its terminal at Sunnyside and Sheridan. Eagle claims that this "free" service emptied its buses from Howard and Hermitage and forced the discontinuance of its service. Sunnyside and Sheridan is only three quarters of a mile away, and Plaza passengers must all buy tickets when they reach that point. Moreover, it was Eagle who petitioned for this rehearing and it certainly cannot be heard to complain that the commission made new findings and modified its order upon the new evidence presented by both Plaza and Eagle upon rehearing.

Findings Nos. 28 and 30 recite that during the racing seasons the public convenience and necessity require that there be service available as borne out by the testimony of several witnesses, and that Plaza should be issued a certificate. Eagle urges that these findings of convenience and necessity are mere conclusions, unsupported by facts. At first glance such findings do seem to be mere conclusions, however, it is a requirement in this State that the Commerce Commission must specifically find that public convenience and necessity require the proposed service.

Such a finding is not a mere conclusion where based upon facts in evidence. (*Gulf Transport Co.* v. *Commerce Com.* 402 Ill. 11.) The findings here are sufficiently specific to render these findings of convenience and necessity more than mere conclusions. Finding No. 28 refers to several witnesses for Plaza who testified that they used Plaza's facilities about once a week. The finding also recites that Plaza carried over 20,000 passengers in 1947. Finding No. 15 shows that Eagle, notably on week ends and holidays, did not have adequate buses to meet the entire demand.

When the statute requires a certificate of convenience and necessity, the word "necessity" is not always used in the sense of "indispensably requisite." (*Wabash, Chester and Western Railroad Co.* v. *Commerce Com. ex rel. Jefferson Southwestern Railroad Co.* 309 Ill. 412.) If it is needful and useful to the public it is necessary. It can hardly be said that 20,000 people who used Plaza's services are merely a few individuals. Such a segment of the population adequately represents the public. Without doubt these findings demonstrate a public convenience and necessity to be served by the issuance of this certificate.

Eagle finally complains that before the commission could lawfully rescind and vacate its prior order of June 16, 1948, it was required to make necessary findings of fact to validly sustain its action, and that the only finding sustaining the order was finding No. 29. That finding stated merely "that the order of June 16, 1948, in this case should be vacated." Eagle is in error, however. Finding No. 26 stating that Plaza failed to satisfy notice requirements in Will County necessitated the vacating of that portion of the original order referring to Lincoln Fields. Finding No. 23 noting Eagle's failure to operate routes from Howard and Hermitage as ordered by the commission and finding that Plaza should perform that service required the vacation of the original order. Moreover, the

additional evidence taken on rehearing relating to mechanical and financial status of both Eagle and Plaza required new findings on these subjects. The commission thus made new findings of fact different from its former findings, and certain conditions have changed causing the factual situation to differ and requiring the entry of a new order. *Central Northwest Business Men's Association* v. *Commerce Com.* 337 Ill. 149.

Eagle is not a pioneer in the field here under consideration and is not entitled to an application of those rules established to protect a pioneer utility. The record shows that public convenience and need for Plaza's certified service were amply demonstrated, and the findings of the commission were reasonably related to the evidence and adequately support the orders entered thereon. Accordingly, the judgment of the superior court of Cook County, affirming the orders of the commission entered January 25, 1951, and February 6, 1951, is hereby affirmed.

*Judgment affirmed.*