HOLLAND MOTOR EXPRESS, INC., *et al.*, Plaintiffs-Appellants, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

First District (3rd Division) No. 86—2474

Opinion filed December 23, 1987.

Joel H. Steiner, of Chicago (Axelrod, Goodman, Steiner & Bazelon, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos and James E. Weging, Special Assistant Attorneys General, of Chicago, of counsel), for appellee Illinois Commerce Commission.

Edward G. Finnegan, of Chicago, for appellee Smith Movers, Inc.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiffs, Holland Motor Express, Inc., and Rudolf Express Company, appeal the trial court's order which affirmed the order of the Illinois Commerce Commission (the Commission) granting the application of defendant, Smith Movers, Inc. (Smith), for an extension of its authority as a common carrier. Plaintiffs contend on appeal that the orders of the Commission are contrary to the manifest weight of the evidence, contrary to law, and constitute an abuse of discretion by the Commission. For the reasons stated below, we affirm the decision of the circuit court affirming the Commission's grant of extended authority.

A hearing was held on Smith's application and the following evidence was adduced. Smith, the applicant, is a minority business concern, wholly owned by Johnnie C. Smith, a black male. Smith has held a common carrier certificate issued by the Commission since 1973 and operates a fleet of motor vehicle equipment consisting of seven tractors, five van trailers, and three straight trucks. The authority Smith has held since 1973 is as a common carrier of property by motor vehicle to transport furniture, accessories and appliances within the terminal area of Chicago (a statutorily defined area); food products, corrugated materials, and commodities dealt in by chain, retail, and mail order stores, and fuel oil within the terminal area of Chicago; and corrugated containers to points within an 80-mile radius of Chicago for a shipper within such authorized area; also dirt, sand and gravel within Chicago. By the application which is the subject of this suit, Smith

sought to expand its authority, both as to authorized commodities and geographical scope of the territory served. The extended authority would allow Smith to transport general commodities as a common carrier by motor vehicle, except in armored or tank vehicles, between points within a 75-mile radius of Chicago on the one hand, and certain points in Illinois on the other.

Five witnesses testified in support of Smith's application. William Spicer, purchasing agent for the City of Chicago, testified that the city supports the application in order to increase Smith's potential to serve the city's shipping requirements and to increase minority participation in city contracts. Pursuant to temporary authority, Smith has been servicing the City of Chicago since October 1985. Spicer stated that the grant of extended authority to Smith would not displace or replace existing carriers who previously have been servicing the city. On cross-examination Spicer admitted that it would be necessary to extend Smith's authority to a radius of 100 miles of the city, rather than the 75-mile radius area sought in the application, in order to meet existing needs. Spicer also stated that he was not testifying about any inadequacies in existing trucking services available to the city.

Jerry E. Zahara, corporate traffic manager for Zenith, testified that Zenith would like to increase its use of Smith's services pursuant to a written contract. Since 1975, Smith has been providing service to Zenith and has dedicated certain equipment to the exclusive use of Zenith. Zahara testified that Smith is an outstanding carrier. Further, Zenith is attempting to advance its relationship with minority-owned businesses. Zahara testified that while Zenith has had some service problems with other carriers, it never had those problems with Smith. Further, Zahara stated that extended utilization of Smith's services would not replace or displace existing carriers.

Paula Thomas, manager of office services for the Illinois Department of Employment Security, testified to a need for the transportation of office furniture throughout the State of Illinois to and from its warehouse in Chicago. The department has utilized the services of Smith in the past and has been satisfied with Smith's service. Thomas testified that all past utilization of Smith's services by the agency has been pursuant to a contract.

A. C. Hopkins, president of Hopkins Foods (Hopkins), a retail grocery chain that operates five stores in Chicago, testified that Smith has serviced his stores in the past. Hopkins testified to the need to increase Smith's geographical authority to extend to a wider area in the State, including Bloomington, Illinois, and to increase Smith's

commodity authority to include a variety of commodities, such as hardware, fixtures, and equipment.

Richard Joseph Funck, manager of governmental and postal affairs for Ward, testified that Ward utilizes Smith's service on a contract basis by utilizing two trucks dedicated to Ward's exclusive use. Smith has been servicing Ward since 1975. Ward pays Smith for its services on a weekly basis, for an eight-hour day, even if Ward does not use the dedicated trucks. Ward would prefer to utilize Smith's service in order to utilize more fully the equipment for which it contracted. Ward seeks to broaden Smith's authority to avoid having the trucks sitting idle. Ward seeks to use Smith's trucks for any commodity that it may ship, including some commodities not presently included in Smith's authority, and to ship goods within a wider geographical scope than that which is included in Smith's existing authority. Funck stated that Ward's utilization of Smith's extended authority would not divert traffic from existing carriers.

Three witnesses, representing intervening parties, testified in opposition to Smith's application. James Shock, vice–president-Sales of Burren Transfer Company (Burren), an interstate and Illinois intrastate motor carrier, testified regarding Burren's transport business. Shock was unfamiliar with the existing scope of Smith's authority. Shock was aware of the identity of Smith's supporting shippers, but stated that Burren was not servicing any of those companies. Shock testified to a decline in general business volume in Illinois over the past few years. He stated that Burren competes with a number of other carriers, and an additional carrier such as Smith could divert business from Burren. Shock stated that diversion of freight would be harmful to Burren, especially since the company earned a profit of only 1½% from operations during the prior year. Shock was unable to identify any specific existing customers which would be diverted by Smith. Shock stated that the volume of traffic available in Illinois would not support an additional motor carrier service. On cross-examination, Shock stated that Burren was objecting to the extension of Smith's territorial authority, specifically to territory south of Route 80.

Daryl E. Clark, vice-president of Rudolf Express Company (Rudolf), testified that Rudolf has common carrier authority to transport general commodities within Illinois. Additionally, Rudolf holds interstate and intrastate authority to serve through and in 15 States. Rudolf operates a fleet of motor vehicle equipment consisting of 73 tractors, eight straight trucks, and 178 trailers. Rudolf introduced at trial an abstract of traffic which it transports. The abstract indicates traf-

fic which would be subject to diversion by Smith. Rudolph earned a profit in 1984 of only .4%. Clark testified that existing business and the volume of freight now moving intrastate in Illinois will not support an additional general commodity carrier. Clark admitted that the only company presently mutually served by Rudolf and Smith was Zenith. Rudolf did not object to Zenith's having the ability to utilize to a greater extent the equipment presently provided to Zenith by Smith.

Kenneth DeVries, manager of commerce of Holland Motor Express, Inc. (Holland), testified that Holland is a motor common carrier having general commodity authority within Illinois and also is engaged in interstate transportation and intrastate transportation in States other than Illinois. DeVries stated that there is not enough Illinois intrastate freight available to support an additional carrier, and that the diversion of Holland's traffic would increase its costs and make it more difficult for Holland to provide service to its customers. DeVries admitted, however, that even if all of its Illinois intrastate business were diverted to other carriers, Holland would not go out of business as a result.

At the conclusion of the hearings, the Commission found, among other things, that Smith is fit to perform the proposed service, in that it possesses sufficient experience, ability, and financing to perform the service; that there is a present and future need for the additional transportation service; that present motor carrier service is not adequate; that although some existing carriers may experience adverse effects from the granting of the authority, the evidence presented shows that any possible diversion of traffic is justified in order to promote adequate transportation service; and that the grant of additional authority will further develop and preserve the highway transportation system, is consistent with public policy, and is required by present and future public convenience and necessity.

On appeal plaintiffs initially assert that the Illinois Commercial Transportation Law (Ill. Rev. Stat. 1985, ch. 95½, par. 18c—1101 *et seq.*) (CTL), effective January 1, 1986, governs the instant case, rather than the Illinois motor carrier of property law (Ill. Rev. Stat. 1983, ch. 95½, par. 18—100 *et seq.*) (MCPL), which was in effect prior to January 1, 1986. Plaintiffs contend that since the Commission's final order, which denied reconsideration of its initial order, was not entered until January 7, 1986, the CTL rather than the MCPL governs.

■■ As indicated by plaintiffs, the CTL repealed and replaced the MCPL. The Illinois Supreme Court has held that "where portions of an ordinance or statute are repeated and retained in the amendatory enactment, or when there is a simultaneous repeal and re-enactment,

such an amendatory ordinance or statute will not affect rights, duties or liabilities accrued under the former portions of the ordinance which have been re-enacted." (*Village of Park Forest v. Wojchiechowski* (1963), 29 Ill. 2d 435, 438, 194 N.E.2d 346.) The record indicates that Smith's application to the Commission was filed on January 16, 1985, and, after hearings were held, the Commission's order granting the extended authority was filed on November 5, 1985. We find that the MCPL, which was in effect on the date of the Commission's order granting the extended authority to Smith, governs the instant case. Since the CTL did not become effective until January 1, 1986, the CTL does not affect the rights and duties of Smith accrued under the MCPL as of November 5, 1985. We do not believe that the fact that the Commission's order denying reconsideration of its initial order was entered after the effective date of the CTL affects the rights and duties incurred by Smith prior to the effective date of the CTL.

Plaintiffs also assert that the Commission's orders and findings are contrary to the manifest weight of the evidence. The MCPL provides guidance regarding the standards governing the Commission's decisions. Section 18—101 of the MCPL expresses Illinois public policy regarding the transportation of property. This section provides, in pertinent part:

"It is hereby declared to be the policy of the State of Illinois to supervise and regulate the business of the transportation of property for-hire by motor vehicle upon and over the public highways of this State in such manner as to (1) recognize and preserve the inherent advantage of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; (2) promote adequate, economical, and efficient service by such motor carriers ***." Ill. Rev. Stat. 1983, ch. 95½, par. 18—101.

Further, the statute provides that the Commission shall issue a certificate of common carrier if it finds the following:

"[T]hat the applicant is fit, willing and able properly to perform the service proposed and to conform to provisions of this Chapter ***, and that the proposed service, to the extent authorized by the certificate, is required by the present and future public convenience and necessity." (Ill. Rev. Stat. 1983, ch. 95½, par. 18—301(b).)

The statute also provides that, in determining whether the issuance of a certificate for a common carrier is consistent with the public interest and declaration of policy set forth in section 18—101, the Commission shall consider, among other factors:

"(1) [T]he nature of the proposed service ***; (2) the adequacy of existing carrier service; (2) the adequacy of existing carrier service; (3) the effect which granting the certificate would have on existing carriers; and (4) whether a grant of authority would further develop and preserve the highway transportation system adequately for and adapted to the needs of commerce within this State." Ill. Rev. Stat. 1983, ch. 95½, par. 18–301(c).

 Where the Commission enters an order granting or denying an application for a common carrier certificate, it must also make specific findings of fact which support its order. (Ill. Rev. Stat. 1983, par. 18–301(d).) These findings must be specific enough to enable the courts to review intelligently the decision of the Commission. (*Gulf Transport Co. v. Illinois Commerce Comm'n* (1948), 402 Ill. 11, 83 N.E.2d 336; *Allied Delivery System, Inc. v. Illinois Commerce Comm'n* (1981), 93 Ill. App. 3d 656, 417 N.E.2d 777.) Accordingly, these findings must be of fact and not mere conclusions. (*Gulf Transport Co. v. Illinois Commerce Comm'n* (1948), 402 Ill. 11, 83 N.E.2d 336.) The evidence before the administrative agency must substantially support the findings. (*United Cities Gas Co. v. Illinois Commerce Comm'n* (1970), 47 Ill. 2d 498, 265 N.E.2d 608.) The Commission's findings of fact are considered *prima facie* true and its orders and decisions are not to be set aside unless they are clearly against the manifest weight of the evidence. *Eagle Bus Lines, Inc. v. Illinois Commerce Comm'n* (1954), 3 Ill. 2d 66, 74, 119 N.E.2d 915.

██ Plaintiffs contend that the Commission improperly applied nonstatutory criteria in considering Smith's application—namely, Smith's minority status and the fact that the opposing carriers conducted interstate operations and intrastate operations in States other than Illinois. We find that while neither of these two factors is specifically contained in the statute's list of factors, nevertheless, they are factors which properly were considered by the Commission insofar as they aided the Commission in its determination of whether the issuance of the certificate to Smith was consistent with the public interest and policy set forth in the statute. (See *Illinois Power Co. v. Illinois Commerce Comm'n* (1986), 111 Ill. 2d 505, 490 N.E.2d 1255; *Egyptian Transportation System, Inc. v. Louisville & Nashville R.R. Co.* (1926), 321 Ill. 580, 152 N.E. 510.) For instance, evidence regarding Smith's minority status could be relevant in considering the promotion and preservation of the public interest in issuing certificates to various carriers. Evidence regarding the fact that the intervening parties operate interstate and intrastate in States other than Illinois

could be relevant in determining the effect on existing carriers of granting Smith's certificate. In any event, the record indicates that the Commission failed to rely very heavily on either or both of these factors in making its decision to grant the extended authority.

Plaintiffs also contend that the evidence fails to show that existing motor carrier service is inadequate, as the shippers who testified before the Commission expressed a mere preference for the services of Smith to other carriers and failed to complain about existing trucking service. Plaintiffs cite *McMann v. Illinois Commerce Comm'n* (1967), 38 Ill. 2d 126, 230 N.E.2d 197, for the proposition that motor carriers who are "first in the field," such as the instant plaintiffs, are entitled to protection from additional competition in the absence of a demonstration that their existing services are inadequate. Further, plaintiffs contend that the Commission's orders fail to reflect an adequate consideration of the adverse impact of the proposed authority upon existing carriers.

■ We find that the evidence supports the reasonable inferences that the existing motor carrier service was inadequate and that Smith demonstrated a need for its services. (*Cooper v. Illinois Commerce Comm'n* (1977), 49 Ill. App. 3d 398, 364 N.E.2d 396.) The Illinois Department of Employment Security (the Illinois Department) presented testimony that it experienced a need to ship furniture throughout the State and that it required a shipper that could move commodities within a building. Further, the Illinois Department indicated dissatisfaction with an existing carrier in that the company's failure to properly perform its services resulted in a delay of shipment and a loss of $7,000 during a two-day shutdown of the Illinois Department's office operations. Additionally, Zenith and Hopkins presented evidence of dissatisfaction with existing carriers. Zenith and Ward indicated that Smith's equipment could be utilized better without displacing existing carriers. Hopkins also presented evidence of a need for Smith's services under the extended authority. Further, the only shipper common to Smith and the intervening parties was Zenith. Zenith's witness testified that Zenith would not replace any carrier by Smith. The Commission's finding that "any possible diversion of traffic is justified in order to improve and promote adequate, efficient and economical transportation service" is therefore also a reasonable finding supported by the evidence. *Be-Mac Transport Co. v. Illinois Commerce Comm'n* (1967), 38 Ill. 2d 154, 159, 230 N.E.2d 216; *Cooper v. Illinois Commerce Comm'n* (1977), 49 Ill. App. 3d 398, 364 N.E.2d 396.

■ Further, while the intervening parties brought some evidence to show that they would be adversely affected by an extension of

Smith's authority, that evidence was insufficient to justify a denial of the extended authority to Smith in view of the totality of the evidence supporting the grant of authority. Rudolf and Burren presented testimony that their profit margins during 1984 were low, and Burren's witness testified that business in Illinois has declined in recent years. However, the Commission properly considered that these companies do not rely completely on Illinois intrastate business but also operate in interstate commerce. Further, Burren's witness testified that Burren was not currently servicing any of the shippers who testified in support of Smith's application. The only company which was being mutually served by Rudolf and Smith was Zenith, and Rudolf's witness stated that Rudolf did not object to Zenith's having the ability to increase its utilization of the equipment dedicated to Zenith. Additionally, Holland's witness stated that Holland would not go out of business if all of the freight it shipped in Illinois intrastate traffic were diverted to other carriers. The Commission considered the evidence of adverse impact on existing carriers and found that any possible diversion of traffic from existing carriers by Smith was justified in order to improve and promote an adequate and efficient transportation system. The evidence amply supports these findings.

■■ ■ Additionally, we find that plaintiffs failed to show that the "first in the field" doctrine applies to the instant case. In *Eagle Bus Lines, Inc. v. Illinois Commerce Comm'n* (1954), 3 Ill. 2d 66, 119 N.E.2d 915, the supreme court stated that before the Commission can grant a certificate of convenience and necessity to one carrier, where another carrier was first in the field, it must be shown that the existing carrier is not providing adequate service. For the rule to be applied in the case of a carrier which is first in the field, it must be proved that such an existing carrier does actually enjoy such priority. (*Eagle Bus Lines, Inc. v. Illinois Commerce Comm'n*, 3 Ill. 2d at 70.) The rationale behind the rule is the protection of an existing carrier's investment and the avoidance of a complete duplication of facilities. *Eagle Bus Lines, Inc. v. Illinois Commerce Comm'n*, 3 Ill. 2d at 71.

In the later case of *McMann v. Illinois Commerce Comm'n* (1967), 38 Ill. 2d 126, 230 N.E.2d 197, the supreme court stated that in cases where the "first in the field" doctrine has been applied, the requirement developed that the Commission must find that existing service is inadequate. However, *McMann* also stated that those cases requiring specific findings of inadequacy involved common carriers over regular routes only or utilities confined to a definite area. The *McMann* court held that since the authority sought therein was to provide service over irregular routes throughout the State, the failure to make a spe-

cific finding of inadequacy was not fatal to the Commission's order. *McMann*, 38 Ill. 2d at 129. See also *Brink's, Inc. v. Illinois Commerce Comm'n* (1981), 103 Ill. App. 3d 851, 431 N.E.2d 1242; *Carlson Transport, Inc. v. Illinois Commerce Comm'n* (1981), 93 Ill. App. 3d 793, 416 N.E.2d 1232.

■■■ An application of case law to the instant case indicates that the "first in the field" doctrine does not bear on the Commission's decision. Plaintiffs failed to show that one of their number was the pioneer carrier in the field. (*Eagle Bus Lines, Inc. v. Illinois Commerce Comm'n* (1954), 3 Ill. 2d 66, 119 N.E.2d 915.) Additionally, the holding in *McMann v. Illinois Commerce Comm'n* (1967), 38 Ill. 2d 126, 230 N.E.2d 197, fails to help plaintiffs' case. The parties in the instant case failed to bring evidence regarding a distinction between regular and irregular routes of service, as was indicated in *McMann*. In any event, such a distinction was not relevant here, since the Commission did make a specific finding of the inadequacy of the existing carrier service, which finding is supported by the evidence. Therefore, the holding of *McMann* fails to defeat the Commission's order.

Plaintiffs further assert that Smith will be unable to provide lawfully the proposed extended service, as Smith seeks authority as a common carrier and the shippers seeking Smith's extended service seek a contract carrier service. Plaintiffs acknowledge that it may be permissible for a common carrier, in a nondiscriminatory fashion, to provide specialized services and dedicate equipment to shippers, pursuant to lawful tariffs on file with the Commission. Plaintiffs assert, however, that the past and present operations of Smith violate the MCPL and CTL, which make it illegal to operate as a contract carrier without a permit from the Commission.

■■■ ■ The distinction between a common carrier and a contract carrier is that a common carrier must hold itself out to provide service to the general public, while a contract carrier provides service only under written bilateral contracts. (*Brink's, Inc. v. Illinois Commerce Comm'n* (1981), 103 Ill. App. 3d 851, 431 N.E.2d 1242.) The seventh circuit court in *Fleming v. Chicago Cartage Co.* (7th Cir. 1947), 160 F.2d 992, stated that a common carrier may enter into certain limited written contracts, for instance, to assign some of its equipment and services to a particular shipper for a certain period of time. (*Fleming v. Chicago Cartage Co.* (7th Cir. 1947), 160 F.2d 992, 994-95. See also *Doyle Transfer Co. v. United States* (D.D.C. 1942), 45 F. Supp. 691; *Illinois Bell Telephone Co. v. Miner* (1956), 11 Ill. App. 2d 44, 136 N.E.2d 1.) However, a common carrier must still hold itself out to the public regarding its services. That is, in determining

whether a common carrier is acting within its authority, consideration may be made regarding whether anyone has ever been refused any of the services which the carrier purports to furnish. *Fleming v. Chicago Cartage Co.* (7th Cir. 1947), 160 F.2d 992, 995.

■■■ We find that the evidence indicates that Smith has held and continues to hold itself out to the public as a common carrier. Plaintiffs in the instant case failed to bring evidence that anyone in the general public ever was denied the services of Smith. Further, the evidence in the record that Smith has entered into certain limited contracts and dedicated certain equipment to Ward and Zenith is not fatal to the Commission's decision. The record fails to show that Smith has violated its authority as a common carrier.

Finally, plaintiffs contend that the orders of the Commission constitute an abuse of discretion as being arbitrary and capricious. Plaintiffs assert that the Commission has denied applications for carrier certificates in other cases based on evidence "remarkably similar" to the evidence presented in the instant case.

■■■ ■ In determining whether a trial court abused its discretion, the question is whether the trial court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted. (*In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 326, 491 N.E.2d 894.) Similarly, the Commission is subject to review regarding whether it acted within its discretion. (See *Illinois Power Co. v. Illinois Commerce Comm'n* (1986), 111 Ill. 2d 505, 490 N.E.2d 1255; *New Landing Utility, Inc. v. Illinois Commerce Comm'n* (1977), 58 Ill. App. 3d 868, 374 N.E.2d 6, *supp. op.* (1978), 58 Ill. App. 3d 873, 375 N.E.2d 578.) The Illinois Supreme Court has stated that "[t]he question of abuse of discretion is always open to judicial inquiry on appeal." *Black Hawk Motor Transit Co. v. Illinois Commerce Comm'n* (1943), 383 Ill. 57, 66, 48 N.E.2d 341.

■■■ We find that the Commission acted properly in reviewing the evidence and applying the statutory criteria to Smith's application. Each of the Commission decisions cited by plaintiffs is based on evidence which differs in significant part from the evidence presented at the hearing on Smith's application. For instance, a supporting shipper in one of the Commission cases testified that there was no present need for the services of the applicant, but only that the shipper expected growth in the future for which the applicant could be utilized as a "back-up" service. In contrast, the evidence in the instant case shows a present need for the services of Smith. Further, plaintiffs fail

to show that the Commission or the circuit court exceeded the bounds of reason or ignored recognized principles of law. Rather, the evidence indicates that the Commission properly followed statutory guidelines in evaluating Smith's application. Plaintiffs have failed to meet their burden of showing clearly an abuse of discretion. *Bicek v. Quitter* (1976), 38 Ill. App. 3d 1027, 1030, 350 N.E.2d 125. See also *Amax Zinc Co. v. Illinois Commerce Comm'n* (1984), 124 Ill. App. 3d 4, 10, 463 N.E.2d 902.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

McNAMARA, P.J., and WHITE, J., concur.