White v. Smith.

ELLA WHITE v. PATRICK J. SMITH.

1. A workman who, by his skill and labor, has enhanced the value of a chattel, under an employment to render the services by the consent, express or implied, of the owner, has a lien on the chattel for his reasonable charges.

2. Consent by the owner to the bailment of a chattel for repairs, need not be given with such formalities or in such a manner as would create a personal liability on his part to pay the charges. The property being improved and enhanced in value by the workman's labor, authority to have it done on the footing of a workman's lien will be implied from circumstances which would not raise an implication of a contract by the owner to pay the charges to be enforced by a suit against him.

3. A wife was the owner of a wagon, which she allowed her husband to use in his business. The wagon needing repairs, the husband took it to a wheelwright to be repaired. The wheelwright made the repairs upon the wagon, thinking it belonged to the husband, and charged the bill for repairs to the husband. *Held*, in trover by the wife, that the wheelwright had a lien on the wagon for his reasonable charges for the repairs.

On *certiorari* to Essex Common Pleas.

The prosecutrix sued the defendant in trover to recover a wagon.

The court certified and returned with the writ the following facts:

The prosecutrix, Ella White, was the owner of the wagon, which she purchased in October, 1878. She allowed her

husband, Alexander White, to use the wagon as his own in his business, for the support of the family, consisting of husband and wife and three children.

The prosecutrix was not engaged in any business separate from that of her husband. She took no step to inform the defendant of her ownership of the wagon. It was worn out by the husband in his business, and brought by him to defendant's shop for repairs, in February, 1880, and the defendant made the necessary repairs upon it, to the value of $26.17, believing that the wagon belonged to the husband, who represented himself to be the owner, and charged the repairs to him. The defendant refused to deliver the wagon to the husband, unless his claim was paid, and then the wife served a notice on him, demanding possession of the wagon.

The defendant then served on the plaintiff a notice, claiming a lien on the wagon for the amount of his charges for repairs.

The Common Pleas sustained the validity of the lien, and gave judgment for the defendant.

Argued at November Term, 1881, before Justices DEPUE, VAN SYCKEL and PARKER.

For the plaintiff in *certiorari*, *J. W. Field.*

For the defendant, *Elias F. Morrow.*

The opinion of the court was delivered by

DEPUE, J.    The effort to subject common law liens to uniform rules must necessarily be unsuccessful. Derived from the civil law, and founded on considerations of equity and justice, the rules by which they are governed vary with the grounds on which such rights are given.

Innkeepers, farriers and common carriers, by the common law, have a particular lien, for they are under an obligation to serve the public in their trades and occupations, and an ac-

tion will lie against them if they should refuse their services without adequate reason. 2 *Kent* 635. By the common law, an innkeeper is bound to receive a guest and the goods he brings with him in the ordinary way, and is liable for their value in case they be stolen. In view of these liabilities, the law invests an inn-keeper with peculiar privileges. He has a lien for his charges on the goods brought to the inn by his guest, even though they belong to a third person, unless he knew that the goods were the property of another, and gave credit upon them in bad faith. *Johnson* v. *Hill*, 3 *Stark.* 172; *Turrill* v. *Crawley*, 13 *Q. B.* 197; *Snead* v. *Watkins*, 1 *C. B.* (*N. S.*) 267; *Broadwood* v. *Granara*, 10 *Exch.* 417; *Threfall* v. *Borwick*, *L. R.*, 7 *Q. B.* 711; *S. C.*, *L. R.*, 10 *Q. B.* 210; *Grinnell* v. *Cook*, 3 *Hill* 485.

A common carrier, on account of his obligation to receive and carry goods, and his liability for their safety in the course of transportation, is allowed a lien upon them for his charges. Inasmuch as the obligations and liabilities of common carriers are identical in nature with those of innkeepers, it would seem reasonable that carriers should be put on the same footing as innkeepers with respect to liens. In *York* v. *Grenaugh*, 2 *Ld. Raym.* 866, it was held by Holt, C. J., (Powell, J., dissenting,) that a common carrier might detain goods for his charges for carriage, although they were delivered to him by a person who had stolen them. I have not discovered that this opinion has ever been dissented from or discredited in the English courts; but the doctrine has been discarded in some cases in the courts of this country, and it has been held that the carrier has no lien for the carriage of goods which he has innocently received from a wrong-doer, without the consent of the owner, express or implied, on the ground that the duty of the carrier to receive and carry goods arises only when they are offered by the owner or by his authority. *Fitch* v. *Newberry*, 1 *Doug.* (*Mich.*) 1; *Robinson* v. *Baker*, 5 *Cush.* 137; *Stevens* v. *B. & W. R. R. Co.*, 8 *Gray* 262; *Clark* v. *L. & L. R. Co.*, 9 *Gray* 231. York *v.* Grenaugh and the American cases are referred to by Pigot, C. B., and a decided prefer-

ence is expressed in favor of the doctrine of the former. *Waugh* v. *Denham*, 16 *Irish C. L.* 405.* I do not propose to discuss this subject, for these cases are distinguishable from the present case, in the fact that the services of the carrier impart nothing to the intrinsic value of the property. To quote the language of Alderson, B., in *Scarfe* v. *Morgan*, 4 *M. & W.* 270, 277, " the chattel does not thereby become valuable *ubicunque sit.*" The owner gets his property back in the condition it was in when he was dispossessed of it, and is quite as liable to be injured as benefited by its transportation from his possession without his authority.

Besides the liens which are allowed to the above-mentioned persons, arising out of the public employment in which they are engaged, in a variety of cases other persons have, by the common law, a right to detain goods on which they have bestowed labor, until the reasonable charges therefor are paid, although such persons are not obliged to receive the goods for that purpose. 2 *Kent* 635. Such a lien arises out of the employment of the workman, and belongs strictly to the person

---

* The following is an extract from the opinion of Pigot, C. B., in Waugh *v.* Denham, upon this point: "When an innkeeper receives a guest, with the horse on which he travels, or when, in the ordinary course of business, a carrier receives goods from the possession of the sender, he deals with a person having all the *indicia* of property. Possession is, in itself, *prima facie* evidence of ownership. To encumber an innkeeper or a carrier with the obligation of inquiring and determining the relation in which the guest or the sender of the goods stands in reference to his possession of what he brings, would be totally inconsistent with the relation in which both the innkeeper and the carrier stand towards the public, for whose benefit they profess to act, and do act, in their respective callings. The business of either could not be carried on if, in the one case, the doors of the inn were closed against a traveler, or in the other, if the carrier's conveyance were delayed at each stopping-place on his journey, until such inquiry should be made. But no such mischief can result from the qualification which Lord Tenterden applied to the rights and obligations of an innkeeper. There can, I apprehend, be no room for doubt that a similar qualification applies to the rights and liabilities of a carrier, and that if a carrier knows (for example) that a thief gives him the goods of the true owner to carry, he cannot charge the owner for the service which he has knowingly rendered to the thief in the carrying of the goods."

who has contracted with the owner to do the work, and does not extend to persons employed by or under him. *Story on Bail.*, § 440; *Hollingsworth* v. *Dow*, 19 *Pick.* 228. Nor does this right of detention arise by the common law in all cases where a chattel is delivered to another by the owner, and services are rendered in the care and custody of it advantageous to the owner's interests. It attaches only where the party to whom the chattel is bailed has expended his skill and labor in the improvement of the chattel, and has thereby conferred an additional value on it. Thus no lien exists at common law for the agistment of cattle, (*Chapman* v. *Allen*, *Cro. Car.* 271; *Jackson* v. *Cummins*, 5 *M. & W.* 342; *Wallace* v. *Woodgate*, 1 *C. & P.* 575); nor in favor of one to whom a horse has been delivered to be stabled, taken care of, fed and kept. *Judson* v. *Ethridge*, 1 *C. & M.* 742. In such cases, a lien for the charges will only arise by virtue of a statute or a special agreement in the nature of a pledge. On the other hand, a liverystable keeper has a lien for the keep and exercise of a horse sent to him for the purpose of being trained. *Bevan* v. *Waters*, 3 *C. & P.* 520; *Forth* v. *Simpson*, 13 *Q. B.* 680. In *Scarfe* v. *Morgan*, 4 *M. & W.* 270, it was held that when S. sent his mare to M., a farmer, to be covered by a stallion belonging to him, M. had a lien on the mare for the charge for covering her. The distinction between these two classes of cases is pointed out by Parke, B., in Jackson *v.* Cummins. He says: "The general rule as laid down by Best, C. J., in Bevan *v.* Waters, and by this court in Scarfe *v.* Morgan, is that, by the general law, in the absence of any specific agreement, whenever a party has expended labor and skill in the improvement of a chattel bailed to him, he has a lien upon it. Now, the case of an agistment does not fall within that principle, inasmuch as the agister does not confer any additional value on the article, either by the exertion of any skill of his own or indirectly, by means of any instrument in his possession, as was the case with the stallion in Scarfe *v.* Morgan; he simply takes in the animal to feed it."

Inasmuch as the lien of a bailee who, by his skill and labor,

has enhanced the value of a chattel, arises from his employment to render the services, it will follow that the employment must be by the owner whose property is to be affected by the lien, or by his consent, express or implied. In *Hiscox* v. *Greenwood*, 4 *Esp.* 174, a coachmaker to whom a carriage had been delivered for repairs by the owner's servant, was denied a lien where the carriage had been broken by the negligence of the servant, without the knowledge of the master, and had been taken by the servant to the coachmaker for repairs, without any orders from his master. In *Hollingsworth* v. *Dow*, 19 *Pick.* 228, the plaintiff had purchased a machine of one Nesbit, in an unfinished state, and had contracted with him to finish it for a stipulated sum. Nesbit employed the defendant, Dow, to finish the machine, without the knowledge or consent of the plaintiff, and it was held in replevin that the defendant did not acquire a lien in his own right for his labor upon the machine.

In both the cases cited the bailment was entirely without the authority of the owner, and without any circumstances from which his consent could be implied; for although in Hollingsworth *v.* Dow the owner knew that the third party was doing the work, he had contracted with another to do it. It must not, however, be inferred that the consent of the owner to such a bailment must in all cases be given with such formalities or in such a manner as would create a personal liability on his part to pay the charges. The property being improved and enhanced in value by the workman's labor, authority to have it done on the footing of a workman's lien will be implied from circumstances which would not raise an implication of a contract to pay the charges to be enforced by a suit.

*Williams* v. *Allsup*, 10 *C. B.* (*N. S.*) 417, is the leading case on this subject. In that case, the plaintiff, a shipwright, detained a vessel for his charges for repairs, as against a mortgagee under a prior mortgage. The mortgage had been recorded pursuant to the Merchants' Shipping act. The vessel was left in the mortgagor's possession and control for

use, and was condemned as unseaworthy. The shipwright's charges were for necessary repairs, made by the mortgagor's direction, without the knowledge of the mortgagee. The court sustained the shipwright's lien for repairs, against the claim of the mortgagee. The course of reasoning which led to this result, as expressed in the opinions of the judges, is as follows: Erle, C. J., said: "I put my decision on the ground that the mortgagee, having allowed the mortgagor to continue in the apparent ownership of the vessel, making it a source of profit and a means of earning wherewithal to pay off the mortgage debt, the relation so created by implication entitles the mortgagor to do all that may be necessary to keep her in an efficient state for that purpose. The case states that the vessel had been condemned as unseaworthy by the government surveyor, and so was in a condition to be utterly unable to earn freight or be an available security or any source of profit at all. Under these circumstances, the mortgagor did that which was obviously for the advantage of all parties interested: he puts her into the hands of the defendant to be repaired; and, according to all ordinary usage, the defendant ought to have a right of lien on the ship, so that those who are interested in the ship, and who will be benefited by the repairs, should not be allowed to take her out of his hands without paying for them. * * * It is to be observed that the money expended in repairs adds to the value of the ship; and, looking to the rights and interests of the parties generally, it cannot be doubted that it is much to the advantage of the mortgagee that the mortgagor should be held to have power to confer a right of lien on the ship for repairs necessary to keep her seaworthy." Willes, J., said: "By the permission of the mortgagees, the mortgagor has the use of the vessel. He has, therefore, a right to use her in the way in which vessels are ordinarily used. Upon the facts which appear on this case, this vessel could not be so used unless these repairs had been done to her. The state of the things, therefore, seems to involve the right of the mortgagor to get the vessel repaired, not on the credit of the mortgagees,

but upon the ordinary terms, subject to the shipwright's lien. It seems to me that the case is the same as if the mortgagees had been present when the order for the repairs was given." Byles, J., said : " As it is obvious that every ship will, from time to time, require repairs, it seems but reasonable, under circumstances like these, to infer that the mortgagor had authority from the mortgagees to cause such repairs as should become necessary to be done, upon the usual and ordinary terms. Now, what are the usual and ordinary terms ? Why, that the person by whom the repairs are ordered should alone be liable personally, but that the shipwright should have a lien upon the ship for the work and labor he has expended on her. Nor are the mortgagees at all prejudicially affected thereby. They have a property augmented in value by the amount of the repairs."

The doctrine of Williams *v.* Allsup was applied as against prior mortgagees by the Supreme Court of New York in favor of the lien of a shipwright for the necessary repairs of a canal-boat, and by the Supreme Court of Massachusetts to repairs on a hack described in the mortgage as in use in certain stables. *Scott* v. *De La Hunt,* 5 *Lans.* 372 ; *Hammond* v. *Danielson,* 126 *Mass.* 294.

It will be observed that in each of these cases the right of the workman to his lien was placed upon the ground that the value of the chattel was enhanced by the labor of the workman, and that it was presumably the intention of all parties that the chattel should be kept in a proper state of repair; from which facts authority was inferred that the person in possession and entitled to use it might have the repairs made upon the usual and ordinary terms, *i. e.,* that the property having been augmented in value by the repairs, the workman should have a lien on it for the work and labor which enhanced its value, and for which, by the common law, he would be entitled to his lien if he was lawfully employed to render the services.

It is important to keep in mind the special grounds on which these cases were decided, for in *Bissell* v *Price,* 28 *N.*

White v. Smith.

Y. 252, it was held that a farmer who, under a special contract with the owner of horses which were subject to a prior mortgage, kept and fed them during the winter, had no lien on them for the price of the keeping as against the mortgagee. The contract was one of agistment, for which the common law gave no lien. The lien arose simply by force of the special contract under which the service was rendered, and had relation only to the date of the contract. Indeed, it is one of the characteristics of common law liens which arise by operation of law, as distinguished from liens created by contract or statute, that the former, as a general rule, override all other rights in the property to which they attach, and the latter are subordinate to all prior existing rights therein.

In the present case the' wagon was owned by the wife. It was put in the husband's charge for use in a business which was carried on for the support of the family, and was probably owned and kept for that purpose. It was in the contemplation of all parties that the wagon could be made useful for the purpose for which it was designed to be used only by being kept in repair. The repairs were beneficial to the interests of both parties—to the husband in fitting the wagon for use ; to the wife in enhancing the value of the property by the repairs put upon it.

I think it clear, on the facts certified by the court below, that the husband had authority from the wife—implied from the manner in which she permitted the wagon to be used—to have the repairs done; and if so, the property became by law subject to a lien for the workman's charges.

The judgment should be affirmed, with costs.