95 N.J. Super. 393 (1967)
231 A.2d 376
KALIO UNIVERSAL, INC., A CORPORATION OF THE STATE OF PENNSYLVANIA, PLAINTIFF-RESPONDENT,
v.
B.A.M. INC., MATURFLEX KNITTING MILLS CORPORATION, AND FAWN HOSIERY COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1966.
Decided June 15, 1967.
*395 Before Judges LEWIS, LABRECQUE and GOLDMANN.
Mr. Abraham H. Carchman argued the cause for appellant Maturflex Knitting Mills Corporation.
Mr. Clifford W. Starrett argued the cause for respondent Kalio Universal, Inc. (Messrs. Schenck, Price, Smith & King, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendant Maturflex Knitting Mills Corporation (Maturflex) appeals from the involuntary dismissal of its counterclaim and from the entry of judgment for plaintiff Kalio Universal, Inc. (Kalio) on the main case.
Plaintiff instituted suit to recover possession of 30 Model LD 401 ladies seamless hosiery knitting machines manufactured by Francesco Lonati, Brescia, Italy, which it had contracted to sell to defendant B.A.M. Inc. (B.A.M.) on June 28, 1962. The sale price was $96,000, of which $24,000 was paid down and the balance was to become due in equal monthly installments of $2,000 beginning August 1, 1962. In accordance with the requirements of the Uniform Commercial Code, Pa. Stat. Ann. tit. 12A § 9-401, a financing statement covering the transaction was dated June 28, 1962 *396 and filed December 24, 1962 in the Prothonotary's Office of Center County, Pennsylvania, in which county the machines were then located. When the machines were later removed to Belvedere, Warren County, a new security agreement in which Fawn Hosiery Company (Fawn) joined, was executed, and a financing statement covering the lien was filed in the office of the Warren County Clerk on June 11, 1963. N.J.S. 12A:9-103(3).
On March 26, 1963, prior to removal of the machines to Warren County, Fawn, in which the owners of B.A.M. had an interest, had entered into an agreement with Maturflex whereby the machines were to be turned over to the latter for use in connection with the carrying out of its contract with Fawn for the fabrication of certain greige goods. The contract provided that Maturflex would pay the cost of moving and installing the machines at its plant in Belvedere and would, at its own expense, keep the machines in good operating condition and surrender them at the termination of the agreement "in as good condition as Maturflex received them except for reasonable wear and tear from everyday use * * *." It permitted Fawn's representatives to inspect the plant and examine the machines weekly and required Maturflex to provide:
"[A]ll of the labor and materials, including but not limited to yarn, labels and packaging supplies, necessary to produce and deliver said greige goods. It is understood that Corporation [Fawn] must only furnish said knitting machines."
In the event of any default or upon the happening of certain other conditions not relevant to the present controversy, Fawn was authorized to enter upon the premises and remove the machines.
Maturflex, of which Leopold Schiff and Hermina Schiff were sole stockholders, was obligated to and did furnish a "landlord's waiver" from the Schiffs as individual landlords of 610 Hardwick Street, Belvedere, where the machines were to be installed, whereby they waived any right of distraint or *397 execution against the machines. However, the machines were actually installed by Maturflex in the adjoining premises at 616 Hardwick Street where Maturflex began to utilize them in the performance of its contract with Fawn.
When plaintiff instituted the present suit to recover possession of the machines for default in payment of the monthly installments by B.A.M. and Fawn, Maturflex counterclaimed charging that (1) Fawn was indebted to it in the amount of $9,287.05 for hosiery already manufactured, for which it claimed a processor's lien upon the machines pursuant to N.J.S. 2A:44-158, (2) it had expended $2,250 in the "repair and enhancement of the value of the machinery," by reason of which it became entitled to a common law artisan's lien or a lien under N.J.S. 2A:44-32 et seq., which was made superior to that of plaintiff as unpaid vendor by virtue of N.J.S. 12A:9-310, and (3) the action of Kalio, B.A.M. and Fawn amounted to a scheme or conspiracy between them to hinder, delay and defraud creditors, especially Maturflex, by removal of the machinery from this State. Neither B.A.M. nor Fawn filed answers.
At the jury trial, Leopold Schiff, president of Maturflex, testified that he had been told by Malesky, Fawn's president, that the machines were in good condition. When he later inspected them he found a "mess," involving broken needles and parts, burned-out parts, wire connections removed and dirty machinery. He testified that this condition was thereafter observed by Friedman, Kalio's president, and Malesky, and that Friedman told him to go ahead and repair the machines and he (Friedman) would pay for the work. The $2,250 represented the total of all sums expended on the machines, without any breakdown. Parts for the machines were ordered through Kalio and paid for by Maturflex in the normal course of business until Maturflex ran into financial difficulties.
The trial judge directed the involuntary dismissal of the counterclaim and the entry of judgment for possession in favor of plaintiff in the main case.
*398 Giving defendant the benefit of all legitimate inferences which could be drawn from the evidence, we conclude that fair-minded men could not honestly have differed as to the conclusions to be drawn from the proofs and that plaintiff was entitled to judgment in its favor on both its claim in replevin and on defendant's counterclaim. Bell v. Eastern Beef Co., 42 N.J. 126, 129 (1964); Kopec v. Kakowski, 34 N.J. 243, 244-45 (1961).
The trial judge concluded that the lien accorded processors by N.J.S. 2A:44-157 et seq. extended only to goods processed rather than to the processing machinery. We agree. N.J.S. 2A:44-158 provides that a processor is entitled to a lien "upon the property of others * * * for whose account labor was performed or materials furnished by him, in and about the * * * [processing] of said property * * *." The "property" to which the lien extends must be the "property" which was given to the processor to be processed. Here, there is no dispute that, under the agreement, the machines were to be used, not processed, by Maturflex. See Newark Slip Contracting Co. v. New York Credit Men's Adjustment Bureau, 186 F.2d 152, 154 (2 Cir. 1951), certiorari denied 341 U.S. 931, 71 S.Ct. 805, 95 L.Ed. 1361 (1951) (construing the New Jersey statute); S.P. Dunham & Co. v. Kudra, 44 N.J. Super. 565, 573 (App. Div. 1957).
To establish a common law lien, an artisan must prove that the chattel was bailed to him, that he expended his skill and labor in the improvement of the chattel, that he conferred upon it an additional value, that he had the expressed or implied consent of the owner to do the work, and that he was employed for the purpose of rendering the service. See White v. Smith, 44 N.J.L. 105, 109, 110, 112 (Sup. Ct. 1882). The lien is distinct from the debt it secures; it is but an incident of an obligation and a remedy therefore in the nature of security. O'Brien v. Buxton, 9 N.J. Misc. 876, 877-78, 156 A. 17 (Cir. Ct. 1931). Although the method of enforcing common law liens is now provided by statute, N.J.S. 2A:44-32 et seq., the common law rules *399 for establishing such liens still prevail. Beck v. Nutrodynamics, Inc., 77 N.J. Super. 448, 451 (Cty. Ct. 1962).
The parties agree that the knitting machines were given to Maturflex so that it could manufacture greige goods for sale to Fawn under its contract with Fawn. The contract provided that Maturflex would bear the cost of repairing and maintaining the machinery and that Maturflex was only obligated to return the machines in the same condition in which they were received except for reasonable wear and tear. Maturflex was in no way obligated to repair the machines except to the extent necessary to render them operable for its purposes. The "fixers" it allegedly employed were a regular part of its business and were not hired expressly for the repair of plaintiff's machines. Maturflex's own employees testified that broken needles and parts were a part of the normal operation of such machines and that movement of the machines from place to place ordinarily necessitated their readjustment and resetting. Therefore, as to the installation and the ordinary upkeep of the machines, Maturflex failed to establish that the parties had the requisite intention of contracting for the purpose of enhancing the value of the machines. The contract expressly disavowed such intention; Maturflex introduced no evidence to indicate a contrary intention. The expenses of maintaining a bailed chattel cannot be secured by a common law lien. See Sullivan v. Clifton, 55 N.J.L. 324 (E. & A. 1893).
Maturflex contends that, contrary to the agreement with Fawn, the machines, when received, were in an unusable condition. Maturflex introduced no evidence to isolate that part of its repairs which were for general upkeep, from those repairs which the contract did not require. In any event, assuming the contention to be true, that alone would not supply the requisite employment for the purposes of rendering the services for the benefit of the owner of the machines or the requisite implied consent of the owner to proceed with the repairs. White v. Smith, supra, at p. 110. Cf. Ruppert v. Zang, 73 N.J.L. 216, 218 (Sup. Ct. 1905). Further, the *400 contract between Fawn and Maturflex provided that Fawn was to pay for the goods knitted by Maturflex when they were delivered, and that Fawn or its representatives could, without notice or demand and without recourse to law, remove the machines from Maturflex's premises. Ordinarily such contract clauses create a credit relationship inconsistent with reliance on a common law lien, and constitute a waiver of common law rights. Beck v. Nutrodynamics, supra, at p. 453; Stone v. Allied Clothing Corp., 140 N.J. Eq. 224, 231-33 (Ch. 1947). See Newark Slip Contracting Co. v. New York Credit Men's Adjustment Bureau, supra, 186 F.2d, at p. 154; 8 C.J.S. Bailments § 35, p. 441-42 (1962).
Assuming that Friedman's "representation" to Schiff that he would be paid for the repairs was sufficient to bind plaintiff to make the payment, that representation alone would not suffice to establish a common law lien. Although Friedman may have consented to the repairs necessary to allow Maturflex to begin production, there was no proof that he intended that Maturflex should enhance the value of the machines for the benefit of the owner. Although we do not hold that the establishment of a common law lien must necessarily rest upon a finding that the lienor was in the business of furnishing the services rendered, the absence of such a showing sheds light upon the purpose for which the services were rendered. Here, the sole inducement for Maturflex was the opportunity afforded it to sell its manufactured goods to Fawn. There was no proof that Maturflex was given the machines for the purpose of enhancing their value for the owner's benefit.
Maturflex's counterclaim alleged that plaintiff B.A.M. and Fawn conspired to deprive it of its security in the machines by bringing the present action in replevin. The gravamen of an action in civil conspiracy is not the conspiracy itself, but the underlying damage such an unlawful action engenders. Earl v. Winne, 14 N.J. 119, 135 (1953). Kurtz v. Oremland, 33 N.J. Super. 443, 456 (Ch. Div. 1954), affirmed o.b. 16 N.J. 454 (1954). The only *401 damage which Maturflex alleges is the loss of its security in the machines. However, plaintiff had a legal right to bring an action for the machines, N.J.S. 12A:9-503, and Maturflex has shown no legal right to retain them. Therefore, defendant failed to show an actionable harm.
In view of our disposition of Maturflex's claim to a lien, we need not, and do not, reach the question of whether, under N.J.S. 12A:9-310, a common law lien is subordinate to a perfected purchase money security interest in chattels. Maturflex produced no proofs to impair the efficacy of the security agreement and financing statements. We find no merit to the remaining points raised.
Affirmed.