# Illinois Official Reports

## Appellate Court

*Ally Financial Inc. v. Pira*, 2017 IL App (2d) 170213

| | |
|---|---|
| Appellate Court Caption | ALLY FINANCIAL INC., Plaintiff-Appellee, v. MICHAEL PIRA, d/b/a Michael's Ultimate Detailing & Design, Inc., Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0213 |
| Filed | December 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-LM-1132; the Hon. Daniel L. Jasica, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Richard D. Grossman, of Law Offices of Richard D. Grossman, of Chicago, for appellant.<br><br>Law Offices of Gabriel B. Antman, P.C., of Chicago (Gabriel B. Antman, of counsel), and Riezman Berger, P.C., of St. Louis, Missouri (Nelson L. Mitten and Abby N. Schneider, of counsel), for appellee. |

Panel                      JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Spence concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff, Ally Financial, Inc., filed a complaint for replevin against defendant, Michael Pira, doing business as Michael's Ultimate Detailing & Design, Inc., seeking possession of a 2013 Chevrolet Silverado. Defendant asserted as an affirmative defense that he had a common law possessory lien, not only for the cost of the work that had been performed on the vehicle, but also for the storage fees that had accrued after the work was completed. The parties filed cross-motions for summary judgment on the sole issue of whether defendant's lien included the storage fees. The trial court found that defendant's lien covered only the charges relating to the work that had been performed on the vehicle, and accordingly, it ruled in favor of plaintiff. Defendant now appeals. We affirm.

¶ 2                             I. BACKGROUND

¶ 3      We begin by noting that the appellate record contains no reports of proceedings or bystander's reports. The following facts are therefore derived from the pleadings. Much of our factual recitation is relevant only for jurisdictional purposes.

¶ 4      Plaintiff's verified complaint for replevin was filed on June 11, 2015. Plaintiff alleged that Robert Siudak had purchased a 2013 Chevrolet Silverado in March 2013. After Siudak executed an installment contract with the dealer, the dealer assigned its interest in the installment contract to plaintiff, and plaintiff perfected its security interest in the vehicle. Plaintiff alleged that Siudak brought the vehicle to defendant's shop shortly before Siudak filed for bankruptcy, in September 2014. Due to Siudak's nonpayment, and pursuant to the terms of the installment contract, plaintiff asserted its right to possession of the vehicle. However, defendant refused to relinquish possession, demanding full payment of all storage fees in addition to the cost of the work that had been performed on the vehicle.

¶ 5      Plaintiff asserted that it was not obligated to pay the storage fees and that it had a superior right to possession of the vehicle, which had a fair market value of $33,475. Accordingly, plaintiff requested that the trial court enter a judgment granting plaintiff possession of the vehicle or, in the alternative, an award against defendant in the amount of $33,475. Plaintiff also requested an award for "[r]easonable attorney's fees, court costs, and for whatever other relief this court deems appropriate."

¶ 6      Defendant's answer was accompanied by an affirmative defense. Defendant asserted that he had a common law possessory lien, for the cost of the work and the storage fees, that took priority over plaintiff's security interest. In an affidavit, defendant attested that Siudak dropped off the vehicle for detailing and minor repairs on June 9, 2014. The work was completed the next day. The charges for the detailing and the repairs amounted to $658. Defendant called Siudak numerous times and left several voice messages. However, Siudak never returned any of the calls, nor did he ever return to pick up the vehicle. Defendant asserted that, as of October

30, 2015, the storage fees amounted to $27,780, accumulating at a reduced rate of $60 per day (the normal rate was $75 per day).

¶ 7     The parties filed cross-motions for summary judgment. Plaintiff acknowledged that defendant was entitled to the cost of the detailing and the repairs, and it averred that it had offered to make such payment. Plaintiff maintained, however, that defendant's common law possessory lien did not extend to the storage fees, as the storage did not impart any added value to the vehicle. Defendant, on the other hand, argued that his lien arose by virtue of his contract with Siudak and that he was therefore entitled to the same rights as a common carrier.

¶ 8     On February 4, 2016, the trial court ruled on the cross-motions for summary judgment, entering an order that granted plaintiff's motion and denied defendant's motion. The order included a ruling that, "as a matter of law in this case, [defendant's] common law possessory lien covers repair charges, but not storage charges." The order also stated that the matter was "continued for further status" to March 3, 2016.

¶ 9     Also on February 4, 2016, the trial court issued an order of replevin directing the Lake County sheriff to take possession of the vehicle and deliver it to plaintiff. However, a handwritten notation stated that execution of the order was stayed through March 3, 2016. Another handwritten notation stated that the order would be executed "upon payment of defendant's common law possessory lien for repair charges."

¶ 10    The record reflects that the next four court dates took place on March 3, April 14, May 5, and June 2, 2016. Defendant did not appear in court on any of these dates. On each occasion, the trial court entered an order of replevin. None of these orders contained any handwritten notations or conditions of enforcement.

¶ 11    On June 14, 2016, defendant filed a motion for a finding of "friendly contempt." He stated that he desired to "test the validity" of the underlying order of replevin, and he asserted that there was "no direct precedent" on the issue of whether his common law possessory lien covered the storage fees. Accordingly, defendant requested that the trial court impose a minimal fine for the purpose of facilitating an interlocutory appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016).

¶ 12    Plaintiff filed a memorandum in opposition to defendant's friendly contempt motion, asserting that defendant needed to post a bond if he wanted to retain possession of the vehicle while the replevin action "proceed[ed] to final judgment and during any subsequent appeal." According to plaintiff, defendant's friendly contempt motion was nothing more than a procedural ploy aimed at retaining possession of the vehicle without having to post a bond.

¶ 13    On October 6, 2016, the trial court entered an order denying defendant's friendly contempt motion. The order noted that defendant's counsel had failed to appear at the hearing that day, as well as the previous hearing, and that the matter was again "continued for status" to November 3, 2016.

¶ 14    The record reflects that plaintiff obtained possession of the vehicle after the denial of defendant's friendly contempt motion. (In its appellate brief, plaintiff states that it "recovered the Vehicle on or about October 21, 2016, through its own recovery company and paid Defendant the total cost of repairs in the amount of $681.00.")

¶ 15    On November 3, 2016, the trial court entered an order prepared by plaintiff's counsel that stated: "This matter is hereby dismissed, without prejudice and with leave to reinstate, and without costs to either party."

¶ 16 On December 13, 2016, defendant filed a "motion for the entry of a final and appealable order." Defendant acknowledged that he had relinquished possession of the vehicle to plaintiff following the denial of his friendly contempt motion. He argued, however, that the order dismissing the case on November 3, 2016, was not final and appealable because it stated that the case was dismissed "without prejudice and with leave to reinstate." Defendant therefore requested that the trial court enter an order "dismissing this case with prejudice." Plaintiff filed a response in opposition, arguing that the trial court lost jurisdiction to alter the order dismissing the case after the passage of 30 days.

¶ 17 On February 23, 2017, the trial court granted defendant's motion for the entry of a final and appealable order. It entered an order stating in pertinent part: "This matter is dismissed with prejudice nunc pro tunc to November 3, 2016; this court finding that, due to a scrivener's error, the Nov. 3, 2016, dismissal was entered without prejudice instead of with prejudice."

¶ 18 Defendant filed a notice of appeal on March 16, 2017. He stated that he was appealing from the order dated February 23, 2017, dismissing plaintiff's complaint with prejudice, as well as from the order dated February 4, 2016, in favor of plaintiff on the parties' cross-motions for summary judgment.

¶ 19 II. ANALYSIS

¶ 20 The only issue disputed on appeal is whether Illinois law supports defendant's claim of a common law possessory lien for the storage fees. However, before we address that issue, we have an independent duty to consider our jurisdiction. *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 739 (2008).

¶ 21 A. Jurisdiction

¶ 22 The Illinois Constitution confers on the appellate court jurisdiction to hear appeals from all "final judgments" entered by the circuit court. Ill. Const. 1970, art. VI, § 6. A "final judgment" is a " 'determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit.' " (Emphasis omitted.) *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 47 (quoting *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982)). Thus, "a judgment or order is considered final and appealable if it determines the litigation on the merits such that the only thing remaining is to proceed with execution of [the] judgment." *People v. Shinaul*, 2017 IL 120162, ¶ 10. If an order leaves the cause still pending and undecided, it is not final for purposes of appeal. *Id.* However, if an order is final and appealable, "a notice of appeal must be filed within 30 days after the entry of the final judgment appealed from or, if a timely postjudgment motion directed against the judgment is filed, within 30 days after the entry of the order disposing of the last pending postjudgment motion." *Estate of Prather v. Sherman Hospital Systems*, 2015 IL App (2d) 140723, ¶ 45; see also Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2015).

¶ 23 This case involves an appeal from a ruling on cross-motions for summary judgment. "When the lower court grants one party's summary judgment motion as to *all issues* and denies the other party's summary judgment motion as to the same issues, the resulting order is final and appealable because it entirely disposes of the litigation." (Emphasis added.) *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 358 (1999).

¶ 24     Here, the only issue raised in the cross-motions for summary judgment was whether defendant had a common law possessory lien for the storage charges. On February 4, 2016, the trial court entered an order that granted plaintiff's motion and denied defendant's motion, including a ruling that, "as a matter of law in this case, [defendant's] common law possessory lien covers repair charges, but not storage charges." The trial court continued the matter "for further status" to March 3, 2016, presumably in hopes that defendant would transfer possession of the vehicle to plaintiff without involving the sheriff. That explains why the accompanying replevin order was stayed to March 3, 2016. But this had no bearing on the finality of the underlying judgment, as the trial court was vested with the inherent power to enforce the replevin order. See *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297 (2000); see also *Anest v. Bailey*, 265 Ill. App. 3d 58, 66 (1994) ("the presence of language retaining jurisdiction for purposes of enforcement does not necessarily render an otherwise final and appealable order nonfinal").

¶ 25     However, given the nature of replevin proceedings, plaintiff might have been entitled to additional relief. "Replevin is strictly a statutory proceeding." *Gunn v. Sobucki*, 216 Ill. 2d 602, 613 (2005); see 735 ILCS 5/19-101 *et seq.* (West 2014). Relevant here, plaintiff might have been able to recover damages sustained by reason of defendant's wrongful taking and detention of the vehicle. See 735 ILCS 5/19-120, 19-125 (West 2014). Plaintiff might also have been able to recover costs for expenses incurred by law enforcement officers in executing the replevin order. See 735 ILCS 5/5-126.5 (West 2014).

¶ 26     In its complaint, plaintiff made a request for "[r]easonable attorney's fees, court costs, and for whatever other relief this court deems appropriate." We note that nothing in the statutes on replevin expressly authorizes attorney fees for the successful plaintiff in a replevin action. Therefore, plaintiff's request for attorney fees would not have been viable. See *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1038 (2009) (observing that Illinois follows the "American Rule," meaning that each party must bear its own attorney fees and costs unless they are expressly authorized by statute or by contractual agreement). However, by requesting "court costs" and "whatever other relief" that the trial court deemed appropriate, plaintiff left open the possibility that the trial court could award costs and damages related to the recovery of the vehicle. The upshot is that the order entered on February 4, 2016, did not entirely dispose of the litigation, meaning that it was not final and appealable.

¶ 27     Moving forward, as explained above, the case remained pending in the trial court for nine months following the ruling on the cross-motions for summary judgment. The trial court issued orders of replevin in March, April, May, and June. Defendant did not appear for any of these court dates, nor did he return the vehicle to plaintiff. Rather, he filed a motion for a finding of friendly contempt on June 14, 2016. He then failed to appear in court when his motion was denied on October 6, 2016.

¶ 28     A confusing chain of events was set into motion when defendant finally appeared in court on November 3, 2016, having recently relinquished possession of the vehicle. The parties apparently sought to have the case "dismissed" for purposes of entering a final and appealable order. The trial court entered an order that stated: "This matter is hereby dismissed, without prejudice and with leave to reinstate, and without costs to either party." However, an order stating that a dismissal is "without prejudice" is not final and appealable. *D'Attomo v.*

*Baumbeck*, 2015 IL App (2d) 140865, ¶ 23.[1] This prompted defendant to file a motion on December 13, 2016, "for the entry of a final and appealable order." Defendant's motion included a request that the trial court enter an order "dismissing this case with prejudice." Over plaintiff's objection, the trial court entered an order granting defendant's motion on February 23, 2017. The order stated: "This matter is dismissed with prejudice *nunc pro tunc* to November 3, 2016; this court finding that, due to a scrivener's error, the Nov. 3, 2016, dismissal was entered without prejudice instead of with prejudice."

¶ 29    We first note that the final judgment in this case was issued when the trial court "dismissed" the matter with prejudice on February 23, 2017. See *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997) ("A dismissal with prejudice is usually considered a final judgment, including the dismissal of claims in a complaint."). Because defendant filed his notice of appeal within 30 days, we conclude that we have jurisdiction.

¶ 30    Regarding the *nunc pro tunc* language in the final judgment, we note that such an amendment "must be based on some note, memorandum, or other memorial in the court record." *Harreld v. Butler*, 2014 IL App (2d) 131065, ¶ 13. Because we have no reports of proceedings or bystander's reports, we presume that the trial court's order is in conformity with the law and had a sufficient factual basis. See *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001). However, the *nunc pro tunc* language does not operate to deprive us of jurisdiction. Although a *nunc pro tunc* order relates back to the time of the order it corrects, it does not relate back to the extent that it would be impossible to file a notice of appeal within the time required by supreme court rules. *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 51 (1999) (citing *People v. Jones*, 104 Ill. 2d 268, 278 (1984) ("[t]he effective date of the order by virtue of the *nunc pro tunc* provisions may have been July 24, 1981, but the date of its entry for purposes of appeal was November 6, 1981")).

¶ 31    Aside from our jurisdiction, there is another aspect of these orders that warrants discussion. Because of the manner in which the parties went about seeking the entry of a final and appealable order, we are presented with a peculiar procedural posture: defendant is taking this appeal after successfully obtaining a "dismissal" of plaintiff's complaint with prejudice. This issue has not been addressed in the briefs on appeal, and there is no indication that it was addressed in the trial court.

¶ 32    Ordinarily, when a defendant obtains a dismissal of a plaintiff's complaint with prejudice, we are precluded from considering an appeal by the defendant. *Argonaut-Midwest Insurance Co. v. E.W. Corrigan Construction Co.*, 338 Ill. App. 3d 423, 427 (2003) ("Where a trial court's judgment is entirely in favor of a party, specific findings of the trial court that may have been adverse to the party do not give rise to an appeal."). Thus, taking the order dated February 23, 2017, at face value, defendant is precluded from seeking any relief on appeal.

¶ 33    However, the record here indicates that the parties and the trial court intended not to enter a final judgment in defendant's favor, but rather to enter a final judgment in *plaintiff's* favor, which defendant could then appeal. This is evidenced not only by defendant's written arguments in the trial court, but also by plaintiff's memorandum in opposition to defendant's motion for a friendly contempt finding. In its memorandum, plaintiff argued that defendant

---

[1]Suggestions to the contrary should be viewed with caution. See, *e.g.*, *Director of Insurance v. A&A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d 721 (2008); *Kempa v. Murphy*, 260 Ill. App. 3d 701 (1994).

was attempting to avoid posting a bond and to retain possession of the vehicle while the replevin action "proceed[ed] to final judgment and during any subsequent appeal."

¶ 34    Thus, although the order dated February 23, 2017, formally declared a dismissal of plaintiff's complaint, it was substantively an order declaring that all matters had been finally adjudicated. We will treat it accordingly. See *Kiefer v. Rust-Oleum Corp.*, 394 Ill. App. 3d 485, 494 (2009) ("Orders must be construed in a reasonable manner so as to give effect to the apparent intention of the trial court.").

¶ 35    Before addressing the merits of this appeal, we comment that this case had clearly come to a close when the parties appeared on November 3, 2016. The trial court had denied defendant's motion for a friendly contempt finding, plaintiff had recovered the vehicle, and there was no award of costs or damages related to the recovery. Under these circumstances, all that was needed for purposes of finality was an order indicating that the trial court had finally disposed of all issues as to the parties. See *Brentine v. DaimlerChrysler Corp.*, 356 Ill. App. 3d 760, 765 (2005) ("Once the trial court enters a judgment disposing of all the issues as to all the parties, such an order becomes final and appealable, and a party has 30 days to file either a notice of appeal or a postjudgment motion."). By instead seeking to achieve finality *through a dismissal*, the parties unnecessarily complicated the parameters of our review. If these circumstances should arise in the future, it would be wise to seek the entry of a final and appealable order that leaves the plaintiff's complaint formally intact.

¶ 36                            B. Common Law Possessory Lien

¶ 37    Defendant contends that the trial court erred in ruling on the parties' cross-motions for summary judgment, maintaining that his common law possessory lien applied not only to the charges for the work that had been performed on the vehicle, but also to the storage fees that accrued thereafter. For the following reasons, we disagree.

¶ 38    Summary judgment is proper only where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). When the parties file cross-motions for summary judgment, they agree that there is no issue as to any material fact and that only questions of law are presented. *City of Oakbrook Terrace v. Suburban Bank & Trust Co.*, 364 Ill. App. 3d 506, 510 (2006). However, a court may still determine the existence of a factual issue sufficient to preclude the entry of summary judgment. We review *de novo* the propriety of an order granting summary judgment. *Id.*

¶ 39    Our supreme court has observed that Illinois recognizes the validity of the common law possessory lien, known in certain instances as the "artisan's possessory lien." *National Bank of Joliet v. Bergeron Cadillac, Inc.*, 66 Ill. 2d 140, 143 (1977). Like this case, *Bergeron Cadillac* involved a secured creditor's action for replevin seeking possession of a vehicle that had been left at a repair shop. The court held that the defendant's common law possessory lien for the cost of the vehicle repairs took priority over the plaintiff's earlier perfected security interest. In so holding, the court rejected the plaintiff's contention that our legislature intended for the common law possessory lien to be superseded by statutes that created liens in favor of repairmen with respect to personal property. *Id.* at 143-44. This holding was based on the then-applicable section 9-310 of the Uniform Commercial Code, which provided as follows:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the

possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise." Ill. Rev. Stat. 1973, ch. 26, ¶ 9-310.

¶ 40 Section 9-310 has since been supplanted and codified as section 9-333 of the Uniform Commercial Code. It provides as follows:

"(a) 'Possessory lien.' In this Section, 'possessory lien' means an interest, other than a security interest or an agricultural lien:

(1) which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;

(2) which is created by statute or rule of law in favor of the person; and

(3) whose effectiveness depends on the person's possession of the goods.

(b) Priority of possessory lien. A possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." 810 ILCS 5/9-333 (West 2016).

¶ 41 Here, there is no dispute as to whether defendant's common law possessory lien takes priority over plaintiff's secured interest in the vehicle. As the pertinent language of section 9-333 tracks that of its predecessor, our supreme court's holding in *Bergeron Cadillac* remains applicable. However, there is scarce Illinois case law discussing the *extent* of a common law possessory lien. As a result, the parties have focused their arguments primarily on two cases: *Navistar Financial Corp. v. Allen's Corner Garage & Towing Service, Inc.*, 153 Ill. App. 3d 574 (1987), and *Country Mutual Insurance Co. v. Styck's Body Shop, Inc.*, 396 Ill. App. 3d 241 (2009). We will discuss *Navistar* and *Styck's Body Shop* in turn.

¶ 42 In *Navistar*, this court observed that common law possessory liens are "fundamentally consensual in nature and can be created only by agreement, by some fixed rule of law, or by usage of trade or commerce." *Navistar Financial Corp.*, 153 Ill. App. 3d at 576. The common law possessory lien has no provision for forfeiture and sale; rather, it is limited to the right to possession of the chattel until the charges have been paid. *Id.* Such a lien is available to two categories of persons: (1) artisans who impart added value to the property and (2) common carriers who are bound by law to accept and carry the goods. *Id.* at 576-77 (citing *George v. Walton*, 43 N.E.2d 515, 517 (Ohio Ct. App. 1942)).

¶ 43 The defendant in *Navistar* towed a truck-trailer unit to its garage after removing it from a ditch on the side of a highway. Shortly thereafter, the plaintiff, a secured creditor, contacted the defendant and claimed the right to possession of the truck, due to the owner's default on his purchase loan agreement. However, the defendant refused to release the truck until all towing and storage charges were paid for the entire truck-trailer unit. This led the plaintiff to file a complaint for replevin seeking possession of the truck. The trial court found that the defendant had established a common law possessory lien for the towing charges related to the truck, but not for the storage fees. *Id.* at 575-76.

¶ 44 On appeal, this court affirmed the trial court's ruling. We first held that, although the defendant qualified as a common carrier, it did not qualify as an artisan, as the "mere towing of a vehicle from one place to another does not add anything to the 'intrinsic value' of the vehicle towed." *Id.* at 577 (citing *West Allis Industrial Loan Co. v. Stark*, 222 N.W. 310, 311 (Wis. 1928)). Turning to the issue of the storage fees, we noted cases where common carriers were

awarded common law liens for storage fees after sustaining "some inconvenience or expense by storing the property until the receiver was ready to remove it." *Id.* at 578 (citing *Schumacher v. Chicago & Northwestern Ry. Co.*, 207 Ill. 199, 207-08 (1904), and *Gregg v. Illinois Central R.R. Co.*, 147 Ill. 550, 562-63 (1893)). However, because the defendant had "retained and stored the truck for no reason other than to be able to insist on its lien rights," we held that it was not entitled to a common law possessory lien for the storage fees. *Id.* at 579.

¶ 45 Here, defendant relies on *Navistar* for the proposition that his common law possessory lien covered the storage fees because he sustained an "inconvenience and expense" by storing the vehicle in conjunction with his services that imparted added value to the vehicle. We disagree. We said nothing in *Navistar* to indicate that artisans—or those who impart added value to the property—are entitled to a common law possessory lien for storage fees. Rather, we concluded that *common carriers* might be entitled to a common law possessory lien for storage fees unless they retain the goods in question solely for the purpose of preserving lien rights. *Id.* at 578. In so holding, we cited cases that highlighted the unique functions and responsibilities of common carriers. See *Schumacher*, 207 Ill. at 207-08:

> "When a railroad company delivering freight at its point of destination has no warehouse at that point suitable for the storage of bulk freight in car-load lots, and the property is of such character that the cars in which it is transported furnish a proper and safe place for the same, so that it is not liable to damage or deterioration arising from heat or cold or the elements, there would seem to be no reason for requiring the transporting company to seek a warehouse of another and add the cost of removal to the cost of storage when said freight may properly be held in storage in the cars in which the same was carried; and after notice to the consignee, and a reasonable time to remove the same, reasonable storage charges may be collected therefor and the freight held for the payment thereof."

See also *Gregg*, 147 Ill. at 560 ("The railroad company was not required to keep the corn in its cars on track indefinitely, and although the consignee was in default in not receiving the freight, after reasonable time and opportunity had been afforded in which to take it, the carrier could not abandon it, but was required to exercise ordinary and reasonable care for its preservation as warehouseman.").

¶ 46 Defendant recognizes our distinction in *Navistar* between artisans and common carriers, but he asserts that he took on the role of a common carrier after Siudak abandoned the vehicle at his shop. Again, we disagree. In Illinois, a common carrier is " 'one who undertakes for the public to transport from place to place such persons or the goods of such persons as choose to employ him for hire.' " *Browne v. SCR Medical Transportation Services, Inc.*, 356 Ill. App. 3d 642, 646 (2005) (quoting *Illinois Highway Transportation Co. v. Hantel*, 323 Ill. App. 364, 374 (1944)). Additionally, a common carrier must hold itself out to provide its services to the general public. *Holland Motor Express, Inc. v. Illinois Commerce Comm'n*, 165 Ill. App. 3d 703, 714 (1987).

¶ 47 Here, there is no evidence that defendant held himself out as one who undertook to transport persons or goods. Therefore, pursuant to *Navistar*, defendant is entitled only to the common law lien rights of an artisan. The weight of authority from other jurisdictions makes it clear that an artisan's common law possessory lien *does not* extend to storage fees, but rather applies only to "reasonable charges" for the work that imparted the added value. See, *e.g.*, *Mack Motor Truck Corp. v. Wolfe*, 303 S.W.2d 697, 702 (Mo. Ct. App. 1957) (observing the

"great weight of authority" holding that an artisan has no common law lien for storage fees); *Yellow Manufacturing Acceptance Corp. v. Bristol*, 236 P.2d 939, 946 (Or. 1951) ("At common law, artisans, tradesmen, mechanics, and laborers, who received property for the purpose of mending, repairing, and improving its condition for hire, had a possessory lien on such property until the reasonable charges and expenses thereon were paid."); *Flesher v. Handler*, 21 N.E.2d 975, 976 (Mass. 1939) ("Although carriers and warehousemen have liens for storage, recognized at common law, in general liens upon chattels at common law were given only for services that improved them."); *Robinson Brothers Motor Co. v. Knight*, 288 S.W. 725, 725 (Tenn. 1926) ("The common-law lien of an artisan employed to bestow labor upon an article is merely a right to detain the article until his reasonable charges for the work are paid."); *A.G. Graben Motor Co. v. Brown Garage Co.*, 195 N.W. 752, 753 (Iowa 1923) ("Liens for repairs were allowed at common law upon the theory that an additional value was imported thereto. Preservation of automobiles by storage is quite different from value added by the skill of the artisan in making repairs thereon.").

¶ 48 We are likewise not persuaded by defendant's reliance on *Styck's Body Shop*. The plaintiff in that case, an insurance company, had an ongoing agreement with the defendant, a body shop, for the towing and storage of damaged vehicles that were insured by the plaintiff. *Styck's Body Shop*, 396 Ill. App. 3d at 241. The defendant charged $20 per day for vehicle storage, which the parties agreed was the industry standard. At some point, the defendant also began charging a $50 processing fee for each vehicle. A dispute over the storage and processing fees led the plaintiff to file a complaint for replevin seeking the return of 24 vehicles. *Id.* at 243. The defendant asserted affirmative defenses based on (1) the Labor and Storage Lien Act (770 ILCS 45/1 *et seq.* (West 2000)), (2) the Labor and Storage Lien (Small Amount) Act (770 ILCS 50/1 *et seq.* (West 2000)), (3) section 4-203 of the Illinois Vehicle Code (625 ILCS 5/4-203 (West 2000)), and (4) "common-law artisan's liens." *Styck's Body Shop*, 396 Ill. App. 3d at 244. The trial court granted the plaintiff's motion for partial summary judgment, ruling that the defendant had no claim for storage charges after the date that the plaintiff had demanded possession of the vehicles and tendered payment of the uncontested charges. *Id.* at 244-45. The appellate court then affirmed the trial court's ruling, holding in pertinent part: "[A]fter the owner of property (other than real property) demands the return of that property from a bailee, the bailee is not allowed both (1) to continue to retain possession of the property pursuant to a lien on the property and (2) [to] charge storage fees for holding the property for the period of time after the demand was made." *Id.* at 247 (citing *Weiland Tool & Manufacturing Co. v. Whitney*, 44 Ill. 2d 105, 118 (1969)).

¶ 49 Here, defendant argues that *Styck's Body Shop* "expressly recognizes a common law possessory lien for storage charges." This argument is misguided. To begin, the basis for the award of storage fees in *Styck's Body Shop* is unclear. As noted, in addition to asserting a common law lien, the defendant in that case also raised affirmative defenses based on certain statutory liens. *Id.* at 244. Moreover, the defendant filed a counterclaim that was not based on any liens, but rather sought to recover civil damages on the basis that the storage fees were contemplated in the parties' original bailment agreement. *Id.* at 256 (Steigmann, J., specially concurring in part and dissenting in part). The counterclaim is noteworthy, as the defendant argued on appeal that the trial court had improperly limited its award of storage fees based on a *statutory* lien limitation, "because its counterclaim was a separate claim to recover damages outside of the lien statute." *Id.* at 249. This indicates that, contrary to defendant's argument in

this case, the storage fees in *Styck's Body Shop* were *not* awarded as part of a common law possessory lien.

¶ 50    However, even if the storage fees in *Styck's Body Shop* were awarded as part of a common law possessory lien, we see no conflict with our holding in *Navistar*. Although *Styck's Body Shop* made no mention of the distinction between artisans and common carriers, it is clear that the defendant in that case was appropriately classified as a common carrier. The defendant was "engaged in the business of vehicle collision repair and towing," but the parties had a continuing agreement only for the hookup, removal, towing, and storage of damaged vehicles. *Id.* at 243. Because none of these services imparted any added value to the damaged vehicles, the defendant could not have been considered an artisan. See *Navistar Financial Corp.*, 153 Ill. App. 3d at 577; see also *Kalio Universal, Inc. v. B.A.M. Inc.*, 231 A.2d 376, 379 (N.J. Super. Ct. App. Div. 1967) ("To establish a common law lien, an artisan must prove that the chattel was bailed to him, that he expended his skill and labor in the improvement of the chattel, that he conferred upon it an additional value, that he had the expressed or implied consent of the owner to do the work, and that he was employed for the purpose of rendering the service."). Thus, pursuant to this court's holding in *Navistar*, if the defendant in *Styck's Body Shop* had a common law possessory lien based on its status as a common carrier, then its lien would have covered the storage fees up to the point that the defendant began storing the vehicles for the sole purpose of preserving its lien rights. *Navistar Financial Corp.*, 153 Ill. App. 3d at 578.

¶ 51    For all of these reasons, we reject defendant's argument that he is entitled to a common law possessory lien for the storage fees pursuant to the holding in *Styck's Body Shop*. That brings us to defendant's final argument, which is based on his agreement with Siudak.

¶ 52    Defendant points to a copy of a document in the record, purportedly signed by Siudak, that appears to be an estimate for the cost of detailing and repairs. A statement in small print at the bottom of the document reads as follows:

> "Daily storage fee after repair work has been completed and customer has been notified. No charges shall accrue or be due and payable for a period of 3 working days from date of notification."

Defendant also directs us to a picture of a sign on its premises that reads:

> "Any Vehicle, Water Craft or Trailer NOT PICKED UP WITHIN Ten (10) days of Completion of Service will be charged a Storage Fee of $75 per day Applied to Original Work Order and Unit will NOT be Released until BALANCE IS PAID IN FULL"

Defendant argues that, based on this evidence, his common law possessory lien for the storage fees arises out of the "contract" that he formed with Siudak. Although plaintiff has not addressed this argument, we nonetheless find that it has no merit.

¶ 53    Defendant's argument is premised on our observation in *Navistar* that common law possessory liens "are fundamentally consensual in nature and can be created only by agreement, by some fixed rule of law, or by usage of trade or commerce." *Id.* at 576; see also *Associates Financial Services Co. v. O'Dell*, 417 A.2d 604, 606 (Pa. 1980) ("Possessory liens are fundamentally consensual in nature, arising from an agreement, either express or implied, between the owner of the goods and the artisan who renders services for those goods."). However, the fact that common law possessory liens are fundamentally consensual does not mean that an artisan may use such a lien as a method of enforcing a contractual obligation for

storage fees. Accord *Lewis v. Gray*, 83 A. 1, 2 (Me. 1912) (holding that "a person who is not a warehouseman, nor in the business of storing goods, but who permits the property of another to remain on his premises, under an agreement that storage is to be paid, has no lien therefor at common law"). Rather, as we have explained, the artisan's common law lien covers only "reasonable charges" for the work that imparted the added value to the goods in question. See *supra* ¶ 47. This holds true regardless of whether the owner and the artisan contract for the storage of the goods following the completion of the artisan's work.

¶ 54                                     III. CONCLUSION

¶ 55        For the reasons stated, we affirm the Lake County circuit court's rulings on the parties' cross-motions for summary judgment.

¶ 56        Affirmed.